[S. F. No. 20640. In Bank. May 25, 1961.]

THOMAS W. MARTIN, as Director of the Department of Alcoholic Beverage Control, Appellant, v. ALCOHOLIC BEVERAGE CONTROL APPEALS BOARD et al., Respondents.

Stanley Mosk, Attorney General, E. G. Funke, Assistant Attorney General, Wiley W. Manuel and James A. Gaughran, Deputy Attorneys General, for Appellant.

Charles P. Just, Chief Counsel, Athearn and Athearn and Forden Athearn for Respondents.

SCHAUER, J.—The Department of Alcoholic Beverage Control (hereinafter called the department) denied an on-sale beer and wine license to applicants Hayes, who thereupon appealed to the Alcoholic Beverage Control Appeals Board (hereinafter called the appeals board). The appeals board reversed the decision of the department. The department, through its director, then brought this mandamus proceeding seeking to compel the appeals board to reverse that board's decision and to affirm the decision of the department. The trial court entered judgment denying the relief sought, and this appeal by the department followed. We have concluded, for reasons hereinafter stated, that the judgment should be affirmed.

In September 1958 respondents Hayes applied for transfer of an on-sale beer and wine license to their restaurant premises known as "The Den," located at 2506 Fillmore Street in San Francisco. In January 1959 a hearing was had on the application. Thereafter the hearing officer issued his proposed decision finding that the applicants' premises are located within the "immediate vicinity of a church, *for which reason* issuance of the license would be contrary to public welfare and morals." (Italics added.) In February 1959 the department adopted the proposed decision as its decision, and denied transfer of the license. Mr. and Mrs. Hayes appealed to the appeals board. That board reversed the decision of the department, stating as grounds for the reversal that *in addition to establishing proximity of the premises to a church,* the record should contain *some evidence* "demonstrating the 'good cause' upon which the Department's exercise of its constitutional discretion is based." Such ruling, as hereinafter more fully shown, follows the law. (See Cal. Const., art. XX, § 22.) This mandamus proceeding followed.

As grounds for reversal of the judgment the department contends that the appeals board is without authority to limit or control the "discretion" herein assertedly exercised by the department in denying transfer of the license; that the department's determination is supported by substantial evi-

dence; that such evidence is provided by the showing of the close proximity of the premises to the church, without more, as well as by other evidence in the record.

Section 22 of article XX of the California Constitution declares, so far as here material, that "The Department . . . shall have the exclusive power, *except as herein provided* and in accordance with laws enacted by the Legislature, to license the . . . sale of alcoholic beverages in this State . . . The department shall have the power, in its discretion, to deny, suspend or revoke any specific alcoholic beverage license *if* it shall determine *for good cause* that the granting or continuance of such license would be contrary to public welfare and morals . . .

"When any person aggrieved thereby appeals from a decision of the department . . . denying . . . any license for the . . . sale of alcoholic beverages, the [Alcoholic Beverage Control Appeals] board shall *review the decision subject to such limitations as may be imposed by the Legislature.* In such cases, the board shall not receive evidence in addition to that considered by the department. *Review by the board* of a decision of the department shall be limited to the questions whether the department has proceeded without or in excess of its jurisdiction, whether the department has proceeded in the manner required by law, whether the decision is supported by the findings, and *whether the findings are supported by substantial evidence in the light of the whole record.* . . . When the [board's] order reverses the decision of the department, the board may direct the reconsideration of the matter . . . but the order shall not limit or control in any way the discretion vested by law in the department. Orders of the board shall be subject to judicial review upon petition of the director or any party aggrieved by such order." (Italics added.) (See also Bus. & Prof. Code, §§ 23080-23087.)

These constitutional provisions were construed in *Martin* v. *Alcoholic Bev. etc. Appeals Board* (and Richards) (1959), 52 Cal.2d 238 [340 P.2d 1]. We there held (pp. 244-245 [3]) that "in cases such as the present one in which the Appeals Board has reversed the Department, the judicial review is necessarily directed at the decision of the Appeals Board, . . . [but] any judicial determination of whether the Appeals Board had exceeded its 'limited' powers would incidentally require a review of the decision of the Department

and of the record upon which the Department's decision had been based.''

As to the respective powers and functions of the department and the appeals board, the court declared to be (p. 246 [4]) ''wholly untenable the applicant's claim'' that the appeals board is ''empowered to exercise full discretion'' and to exercise ''its independent judgment'' on conflicting evidence. (Rather (pp. 246-257 [5]) the appeals board is limited by the ''substantial evidence'' rule. ''[P. 248 [6]]

As the Department was vested with 'power, in its discretion, to deny' the license upon its determination 'for good cause that the granting . . . would be contrary to public welfare, . . .' the broad range of its power and discretion is at once apparent. The Department made a finding here of the ultimate fact that the granting 'would be contrary to public welfare,' and such finding was unassailable on appeal to the Appeals Board if there was substantial evidence in the record to show that such determination was made 'for good cause.' '' (See also *Martin* v. *Alcoholic Bev. etc. Appeals Board* (and Chaney) (1959), 52 Cal.2d 259, 265 [4b] [341 P.2d 291].)

The appeals board urges in the case at bench that despite the ''broad range'' of the power and discretion of the department as announced in the above-cited Richards case, such discretion is nevertheless not unbounded but instead must be confined within the same rules and principles as those observed by a court in the exercise of judicial discretion, and that the action of the department here claimed to have been an exercise of discretion was so arbitrary and capricious as to amount to no legal or proper exercise thereof. Further, it is emphasized, the constitutional provision empowers the department to ''in its discretion'' deny a license only ''if it shall determine *for good cause*'' (italics added) that the granting thereof would be contrary to public welfare or morals.

The record upon which both the department and the board reached their respective determinations in the present case shows that the Hayes restaurant premises at 2506 Fillmore Street for which an on-sale beer and wine license is sought are located on Fillmore Street some 25 feet north of its intersection with Jackson Street. Within a 600-foot radius of such premises there already exist eight premises licensed by the department (one on-sale beer and wine license and seven off-sale general licenses). Immediately adjacent to the Hayes premises, to the south, and on the corner of Fillmore and

Jackson Streets is a grocery store licensed by the department as an off-sale general licensee, whose advertising of alcoholic beverages is clearly visible from the sidewalk. The area south of Jackson along Fillmore is primarily a commercial area; the area north of Jackson on Fillmore is primarily residential.

The church mentioned in the department's decision denying the license is the Calvary Presbyterian Church. It is located directly across Fillmore, and 70 feet distant from the Hayes premises, and a church parking lot is located adjacent to such premises to the north on Fillmore Street. *The church did not file a protest against issuance of the license and was not a party to the proceedings before the department, and the record contains no testimony of any official or member of the congregation of the church.* The only witness called on behalf of the department was its own agent, one Harris, who testified, over objection by the applicants, that he had been told that the church had been in the area approximately 55 years, that it has a congregation of approximately 1,400, that regular church services are conducted on Sundays and certain functions such as Bible classes for "young church members" are carried on through the week. Applicants do not dispute that this church is used for purposes "such as most churches are used for," but aside from the just-related hearsay testimony of agent Harris the record contains no evidence of the actual church activities.

Harris stated further that "The premises is . . . primarily a restaurant . . . having full facilities for the service of food, et cetera. . . . It is not a public premises or bar type of operation."

Applicant Mr. Hayes testified that he and his wife as partners had been operating the restaurant for two years, and both personally worked there, with four other employes; that they held a 10-year lease and had expended some $8,000 in improvements; that the restaurant has a seating capacity of 68, including both a counter and seven booths; that the "city has licensed us to do business as a Class A eating house, and we maintain and operate and try and get into our place the best type of clientele"; that the "greater percentage of" the restaurant's patrons came "From the Pacific Heights area and businessmen around the adjoining area," and there is no patronage from children; that there is no other restaurant "of similar quality and caliber in the immediate vicinity"; that it is open daily from 9 a.m. to 10 p.m., but approximately 75 per cent to 80 per cent of its business is

done during evening hours, from about 5 p. m. to 10 p. m.; that "shortly after church on Sunday" some of the members of the church, including its minister, patronize the restaurant —chiefly for coffee, although occasionally for breakfast; that an on-sale beer and wine license was being sought "To enhance our food . . . and also to try and get into our establishment a little more of the clientele which we are trying to reach."

Captain Nelson of the San Francisco Police Department, who heads the district in which the subject premises are located, testified that it was a "very attractive restaurant," and he recalled no complaints against it; that he investigated the application for a beer and wine license and found that "it was a high-class bona fide restaurant and they wanted to serve beer and wine with dinners."

Mr. Prout, a schoolteacher who resides and owns property on Fillmore Street about 100 feet distant from the Hayes premises, likewise testified that "It is a very high-class restaurant. It has been improved steadily since Mr. Hayes has taken over there."

The department found and concluded, so far as here material, that "The entrance to the church, and the entrance to the [Hayes] premises are directly across Fillmore Street from each other, the distance between the two doorways being about 70 feet. The . . . premises, therefore, are located within the immediate vicinity of a church, . . . *for which reason* issuance of the license would be contrary to public welfare and morals." (Italics added.)

Respondents in support of their position that the evidence fails to support the findings and the decision of the department, urge that the only direct evidence with respect to the church was that showing its proximity to the Hayes premises, and that the brief statements of the department's agent Harris concerning church activities was admitted hearsay only.

They contend that such proximity, standing alone, does not provide the "good cause" required by the constitutional provisions as the basis for a determination by the department "in its discretion" that the granting of a license "would be contrary to public welfare or morals," and that denial of the license on such ground constitutes an abuse of discretion, particularly when considered in the light of other decisions of the department made in similar circumstances. The department points out, however, that it was also established by direct and competent evidence that the church parking lot was

immediately adjacent to the premises, that the restaurant on such premises is open every day from 9 a. m. to 10 p. m., that some of the church members patronize the premises for coffee or breakfast after church on Sundays, that the church is used for general church purposes, and that the neighborhood north of Jackson Street surrounding the church is essentially a residential area. All of this evidence taken together the department contends is sufficient to establish good cause for its determination that issuance of a license would be contrary to public welfare and morals.

At the time of the department's decision herein, section 23789 of the Business and Professions Code provided that "The department is specifically authorized to refuse the issuance of on-sale retail licenses for premises located within the immediate vicinity of churches. . . ." This legislative enactment of course could not impair the constitutional requirement of a showing of "good cause" for such refusal of a license (see *Martin* v. *Alcoholic Bev. etc. Appeals Board* (and Richards) (1959), *supra,* 52 Cal.2d 238, 245 [3]) and, obviously, it did not determine that the proximity of the premises to a church was in and of itself "good cause" for refusal of the license. If *mere* proximity were as a matter of law "good cause" for denial of a license the department would not be specifically *authorized* to refuse the issuance; by contrast, it would be specifically *required* to refuse it. Therefore, by the terms of the statute and the Constitution it is clear that in every such case the department is bound to exercise a legal discretion in passing on the application.

Legal discretion, in the circumstances, is judicial discretion. "Courts have often asserted that such power is broad and inclusive. That assertion is true, but it is true only within the limits of fixed legal principles (*Brill* v. *Fox* (1931), 211 Cal. 739, 743 [297 P. 25]). Such power cannot enlarge its own boundaries or support acts requiring other legal bases. Even within its legal limits the power is not unbridled. The mere fact that a court may have jurisdiction to make an order does not equip it to exercise *judicial discretion*. Its acts must not only be confined within the field of *discretion* but must also be of a character within the bounds of the limiting adjective 'judicial.' To exercise that power all the material facts in evidence must be both known and considered, together also with the legal principles essential to an informed, intelligent, and just decision. . . .

"The term 'judicial discretion' was defined in *Bailey*

v. *Taaffe* (1866), 29 Cal. 422, 424, as follows: 'The discretion intended, however, is not a capricious or arbitrary discretion, but an impartial discretion, guided and controlled in its exercise by fixed legal principles. It is not a mental discretion, to be exercised *ex gratia*, but a legal discretion, to be exercised in conformity with the spirit of the law and in a manner to subserve and not to impede or defeat the ends of substantial justice." (*Gossman* v. *Gossman* (1942), 52 Cal.App.2d 184, 194-195 [5] [126 P.2d 178] ; see also *People* v. *Barnett* (1946), 27 Cal.2d 649, 657 [2b] [166 P.2d 4] ; *People* v. *Stein* (1948), 31 Cal.2d 630, 633 [1] [191 P.2d 409]; *Sweeley* v. *Sweeley* (1946), 28 Cal.2d 389, 393-394 [5, 6] [170 P.2d 469].)

[██ As declared in the Richards case (*Martin* v. *Alcoholic Bev. etc. Appeals Board* (and Richards) (1959), *supra,* 52 Cal.2d 238, 248 [7]) "[I]f it be conceded that reasonable minds might differ as to whether granting [a license] would or would not be contrary to public welfare, such concession merely shows that the determination of the question falls within the broad area of discretion which the Department was empowered to exercise." ██ Nevertheless, the discretion to be exercised by the department under section 22 of Article XX of the Constitution "is not absolute but must be exercised in accordance with the law, and the provision that it may revoke [or deny] a license 'for good cause' necessarily implies that its decisions should be based on sufficient evidence and that it should not act arbitrarily in determining what is contrary to public welfare or morals." (*Weiss* v. *State Board of Equalization* (1953), 40 Cal.2d 772, 775 [3] [256 P.2d 1], quoting from *Stoumen* v. *Reilly* (1951), 37 Cal. 2d 713, 717 [4] [234 P.2d 969].)

In the Stoumen case the State Board of Equalization, predecessor to the department, suspended plaintiff's general on-sale license to sell alcoholic beverages at the Black Cat Restaurant in San Francisco, on the finding that plaintiff, in violation of sections 58 and 61(a) of the Alcoholic Beverage Control Act (2 Deering's Gen. Laws, 1944, Act 3796), "kept and permitted his licensed premises to be used as a disorderly house in that . . . persons of known homosexual tendencies patronized said premises and used said premises as a meeting place" (p. 715 of 37 Cal.2d), and that beer was sold to a minor. Several police officers had testified that many of the patrons of the Black Cat were homosexuals and that it was reputed to be a "hangout" for such persons. A number of *people were arrested there, some for vagrancy and some* because they "demonstrated homosexual actions," but there

was no showing that any of those arrested were convicted. There was no evidence of any illegal or immoral conduct on the premises or that the patrons resorted to the restaurant for purposes injurious to public morals. Chief Justice Gibson, speaking for a unanimous court, declared (p. 717 [5] of 37 Cal.2d), "In order to establish 'good cause' for suspension of plaintiff's license, something more must be shown than that many of his patrons were homosexuals and that they used his restaurant and bar as a meeting place." The trial court was directed to issue a peremptory writ of mandate requiring the board to set aside its order of suspension and to take further action by way of fixing an appropriate penalty based solely on the sale of beer to a minor.

In most of the reported cases where proximity of the premises to a church or school was involved, the evidence had considerably more substantiality than that in either the Stoumen case or the case at bench. In *Weiss* v. *State Board of Equalization* (1953), *supra,* 40 Cal.2d 772, 774, plaintiffs applied for an off-sale beer and wine license at premises where they conducted a grocery and delicatessen business. The premises were across the street and some 80 feet distant from certain high school buildings; seven other premises in the immediate vicinity held liquor licenses. The board denied the license on the grounds that its issuance would be contrary to the "public welfare and morals" because of the proximity of the premises to the school, and in mandamus proceedings the trial court gave judgment for the board. On appeal it was recognized that the board's discretion is not absolute, and its decisions must be based on sufficient evidence, but in the circumstances it was held that (pp. 775-776 [5]) "We cannot say . . . that it was unreasonable . . . to decide that public welfare and morals would be jeopardized by the granting of an off-sale license at premises within 80 feet of some of the buildings on a school ground." Whether the school authorities had objected to the application for license is not stated in the opinion but it may be noted that the school was a public high school and that some of its buildings were used for R.O.T.C. Here, the church is, of course, a private organization which could have but did not object to respondents' application.

In *Hansen* v. *State Board of Equalization* (1941), 43 Cal.2d 176 [110 P.2d 453], licenses for premises located in a business district of Pacific Grove were denied after protests by the "officials and leading citizens of said city." The record showed, among other things, that no alcoholic beverage business had ever been maintained in Pacific Grove, that the city

was originally conceived and laid out as a religious camp meeting ground, that a considerable number of persons residing there had moved to the city because of the nature of the community, that the city was an outstanding recreational center for children and young adults, that parents and children had made their home in Pacific Grove because of this unusual recreational development and the general moral tone of the city, that the entire city was a purely residential area with no industry and no adjacent agricultural industry and was comparatively free of crime, particularly crimes involving drunkenness.

In *Altadena Community Church* v. *State Board of Equalization* (1952), 109 Cal.App.2d 99 [240 P.2d 322], an on-sale general license was granted to a restaurant *over the protests* of 500 citizens of the area and the protests of three churches located, respectively, 50 feet, 235 feet, and 300 feet from the licensed premises; one of such churches operated a youth center some 220 feet from the premises. The record showed considerable other evidence as to the geographical and operating methods and relationships of both the applicant and the churches (pp. 101, 104-105 [1b]). The finding of the board was that (p. 102) the ''premises are located in a business district and consist of a high-type restaurant with an outdoor dining area,'' that other liquor licenses had previously been issued to the same premises, and that such premises were not so located ''with respect to said churches and youth center as to cause a moral hazard'' thereto.

In *Schaub's Inc.* v. *Department of Alcoholic Bev. Control* (1957), 153 Cal.App.2d 858 [315 P.2d 459], plaintiff applied for the transfer of an off-sale retail general liquor license to a super food market, which was located at a distance of 100 feet, and across the street, from a *protesting church.* Services were conducted at the church on Sunday morning, Sunday evening and Wednesday evening. The Sunday church attendance averaged between 200 and 400 persons. Youth meetings were also held on Friday and Saturday evenings, with the average age of those attending being between 12 and 20 years. Some church organizations met at the church during daytime hours. The main entrance to the church was across the street from plaintiff's premises. The department denied transfer of the license and was sustained by the appeals board, the trial court, and the appellate court.

In *Board of Trustees* v. *Munro* (1958), 163 Cal.App.2d 440 [329 P.2d 765], a general off-sale license was granted,

*over protests by a school board and a church,* to a supermarket located in a neighborhood shopping center. The licensed premises were some 365 feet distant from a school, 171 feet distant from a church, and 400 feet from a municipal swimming pool patronized by both children and adults. The record (pp. 442-445) also contained extensive and detailed evidence descriptive of the neighborhood and of the plan of operation of the market. The decision of the department was affirmed by the appeals board, and upheld by the court on appeal.

In *Hasselbach* v. *Department of Alcoholic Bev. Control* (1959), 167 Cal.App.2d 662 [334 P.2d 1058], an on-sale liquor license was granted to a grocery store *over the protest of an official of a church* located 210 feet distant. The record (pp. 665-666) showed evidence as to traffic and general business activity in the locality, that the area near the market was predominantly commercial, that the number of customers patronizing the store had increased by approximately 3,000 per week during the year preceding the hearing, and that the church had a congregation of some 700 and conducted an elementary school with an enrollment of 130 students ranging in age from 5 to 12 years of age. The department's order was affirmed by the appeals board, and on petition to the courts mandamus was denied.

In *Bowman* v. *Alcoholic Bev. etc. Board* (1959), 171 Cal. App.2d 467 [340 P.2d 652], an on-sale license for an inn in Idyllwild (Riverside County) was denied *after protests* by the county board of supervisors and by seven residents of the community. The record shows (pp. 469-471) that many years ago Idyllwild was established as primarily a religious community, that there "are extensive camp grounds of religious institutions, youth camps, cultural and educational institutions, the Idyllwild Arts Foundation with a yearly enrollment of 1,000 people, mostly young people. The Southern California Conference of Religious Education maintains camp grounds which are used by great numbers of persons, and a nearby Christian Endeavor camp has an annual attendance of 5,000 persons. There is a proprietary school for eighth to twelfth grade pupils; there is a religious retreat known as 'Center of Creative Living' which accommodates 1,000 overnight guests a year; there is a lodge commonly patronized by Girl Scout groups, Camp Fire Girl groups and religious fellowship camps. There was evidence of extensive use of special areas by Boy Scout troops and that many thousands of tour-

ists, campers and lovers of the outdoors find recreation and rest in the community. There was also evidence that there is not to be found in Southern California a comparable religious community and that one of the factors that has led to its extensive development has been the absence of establishments for the sale of liquor . . ."

It thus appears that the cases are not altogether consistent. Each case seems to have turned upon its own facts but, as already noted, in most of the cases the evidence was considerably more extensive and detailed than in the case now before us, and the determining factor in upholding original decisions by the department (or by its predecessor Board of Equalization) was whether there was substantial evidence on which reasonable minds might differ as to whether the denying or granting of the license would or would not be contrary to public welfare and morals. It is, however, the declared rule that neither in the case of revocation of an existing license nor in denying an application for a license can the department act arbitrarily or without a showing of good cause. (See e.g. *Weiss* v. *State Board of Equalization* (1953), *supra,* 40 Cal.2d 772, 775 [2, 3].)

 After surveying the entire record in the case at bench we are unable to hold that the appeals board and the trial court erred in concluding that there is no substantial evidence to sustain the determination of the department that good cause existed for its denial of the license sought by respondents Hayes. Such record, without any apparent conflict, tends to establish that Mr. and Mrs. Hayes are law-abiding persons who operate a superior restaurant and are endeavoring to make its services still better, and attractive to a larger number of patrons. The fact that a church used for customary church purposes is located only 70 feet from the Hayes premises, is not as a matter of law, as we have shown above, sufficient to support the department's order. Furthermore, in resolving the issue before it, the department could not arbitrarily refuse to consider the other pertinent and undisputed evidence. Proximity of the church, when considered in the light of the facts that the church did not protest issuance of the license to Mr. and Mrs. Hayes, and that within a 600-foot radius of the Hayes premises there already exist eight licensed premises, of which only one holds an on-sale beer and wine license, does not appear of such significance as to support the decision of the department. Accordingly we are constrained to conclude that the appeals board and the

trial court were correct in their view that on this record it is not shown that the service of wine and beer in the Hayes restaurant would contravene public welfare or morals.

The judgment is affirmed.

Gibson, C. J., Traynor, J., McComb, J., Peters, J., White, J., and Dooling, J., concurred.

Appellant's petition for a rehearing was denied June 21, 1961.