[Civ. No. 48649. First Dist., Div. One. Sept. 10, 1980.]

WILLIAM J. SEPATIS, Petitioner, v.
ALCOHOLIC BEVERÁGE CONTROL APPEALS BOARD,
Respondent;
DEPARTMENT OF ALCOHOLIC BEVERAGE CONTROL et al.,
Real Parties in Interest.

**COUNSEL**

George T. Choppelas for Petitioner.

Floyd R. Mitzner for Respondent.

George Deukmejian, Attorney General, Matthew P. Boyle, Deputy Attorney General, Richard S. Millard and Heller, Ehrman, White & McAuliffe for Real Parties in Interest.

OPINION

**GRODIN, J.**—This case presents apparently novel questions in the context of liquor licensing. It arose when William Sepatis (petitioner) applied to the Department of Alcoholic Beverage Control (Department) pursuant to Business and Professions Code section 23950 et seq.[1] for transfer of an on-sale retail liquor license to a renovated building on Haight Street, San Francisco, so that he might operate a bar at that location. Section 23958 provides in part that the Department "may deny an application for a license if issuance of such license would tend to create a law enforcement problem, or if issuance would result in or add to an undue concentration of licenses and the applicant fails to show that public convenience or necessity would be served by such issuance."[2] The Department uses a statistical formula, based upon the ratio of on-sale retail licenses to population, as a guide for determining whether an "undue concentration" of licenses exists,[3] and by that formula there already

---

[1]Hereinafter all code references are to the Business and Professions Code unless otherwise indicated.

[2]The portion of section 23958 quoted in the text, consisting of the second paragraph of that section, was added in 1963 (Stats. 1963, ch. 1642, § 2). The first paragraph provides as follows: "Upon receipt of an application for a license or for a transfer of a license and the applicable fee, the department shall make a thorough investigation to determine whether the applicant and the premises for which a license is applied qualify for a license and whether the provisions of this division have been complied with, and shall investigate all matters connected therewith which may affect the public welfare and morals. The department shall deny an application for a license or for a transfer of a license if either the applicant or the premises for which a license is applied do not qualify for a license under this division." While the second paragraph does not expressly refer to applications for license transfer, all parties have assumed in their argument, and we assume for purposes of decision, that its provisions are applicable. (Cf. *Greve* v. *Leger, Ltd.* (1966) 64 Cal.2d 853 [52 Cal.Rptr. 9, 415 P.2d 824].)

[3]The formula appears in the form of a published rule (Cal. Admin. Code, tit. IV, § 61.3) which, at the time of the application, read in part as follows: "For the purpose of Section 23958 of the Alcoholic Beverage Control Act, undue concentration includes, but is not limited to, conditions set forth below: [¶] The applicant premises for an original or premises-to-premises transfer of any retail license is located in a crime reporting district which has a 20% greater number of reported crimes than the average number of reported crimes as determined from all crime reporting districts within the jurisdiction of the local law enforcement agency if either of the following conditions exists: [¶] (a) The ratio of on-sale retail licenses to population in the census tract or census division in which the applicant premises is located exceeds the ratio of on-sale retail licenses to population in the county in which the applicant premises is located. [¶] (b) The ratio of off-sale retail licenses to population in the census tract or census division in which the applicant premises is located exceeds the ratio of off-sale retail licenses to population in the county in which the applicant premises is located. [¶] Notwithstanding the above, the department may issue a license if the applicant shows that public convenience or necessity would be served by such issuance."

existed four "too many" bars in the Haight Street area.[4] In the hearing conducted by the Department, however, there was evidence that the proposed premises would be different from existing bars in certain respects. Located in a renovated Victorian building with large windows on two sides, it was to be a "fern" bar; a now-common type of saloon marked by an ambience of ferns and other plants, the interior of which is visible from the outside. Petitioner testified that he planned to operate the bar as a "Victorian type of pub," with snack food and facilities for patrons to play games such as chess and backgammon. Eventually, he said, he plans to operate a restaurant adjacent to the premises. Seven residents testified and several others related by written communication that a bar of that description would, for various reasons, appeal to them over existing bars in the area.[5] The administrative law judge found, and the Department adopted his findings, that the proposed premises "will appeal to all segments of the community including many residents and business people in the area who are presently reluctant to enter other bars in the vicinity," and that it would thus serve public convenience or necessity. No protests were received from churches or schools in the area, nor did the San Francisco Police Department protest issuance of the license.[6] The Department, in accordance with the administrative law judge's proposed opinion, found that approval of the application would not add to law enforcement problems in the area. Accordingly, the Department granted the application.

---

Petitioner, as an alternative ground for challenging the Board's decision, argues that section 61.3 violates the Constitution of the State of California and applicable provisions of the Business and Professions Code in certain respects. We do not consider or pass upon that argument here.

[4] Evidence before the Department indicated that there were, at the time of petitioner's application, 23 on-sale licensed premises of various types in the area, though 2 were "up for revocation." The rule 61.3 formula would allow 19.

[5] Three persons testified in opposition to the application. One, on behalf of the Haight-Ashbury Neighborhood Council, expressed the view that the proposed premises represented a change away from a neighborhood community and toward a city "entertainment center," a change which his organization opposed. A second witness expressed general concern about real estate speculation and rent increases, and with the level of drinking and intoxication in the neighborhood. The assistant director of the Haight-Ashbury Center for Alcohol Problems testified as to the relatively high level of alcohol abuse in the area and expressed the opinion that there is a causal relationship between alcohol abuse and the number of licensed premises in which alcoholic beverages could be obtained.

[6] Ernest Raabe, police captain at the local police station, wrote the administrative law judge to the effect that petitioner's application "is viewed favorably by this office."

On appeal by protestors (real parties in interest) the Alcoholic Beverage Control Appeals Board (Board) reversed. It reasoned that the term "public convenience or necessity" relates simply to the "*availability* of alcoholic beverages for purchase by the general public of a community," and that in determining the existence of public convenience or necessity "the department may not concern itself with the physical appearance of the structure housing a licensed premises nor the esthetic features thereof." Nor, the Board opined, is it appropriate to consider the fact "that an applicant would cater to a particular segment of the public" or that "a certain group of persons does not feel comfortable in the presence of some other group of persons at other licensed premises." Accordingly, it determined that the Department's finding of public convenience or necessity was not supported by substantial evidence. We granted petitioner's application for review of the Board's order (§ 23090 et seq.) to consider the issues thus presented.

█ Section 23958 appears to authorize issuance of a license upon some requisite showing of public convenience or necessity even though it is determined that issuance would otherwise "result in or add to an undue concentration of licenses." The language is perplexing, to be sure. "Undue" ordinarily means "unsuited to the time, place, or occasion" (Webster's Third New Internat. Dict. (1965 ed.)), and a finding that an additional license would produce "undue" concentration in that sense seems somewhat at odds with the notion that public convenience or necessity would nevertheless be served by its issuance. We are obliged, however, by principles of deference to the legislative branch and by established rules of statutory construction to construe apparently contradictory provisions in such a way as to achieve harmony rather than hold that there is an irreconcilable inconsistency. (*Estate of McDill* (1975) 14 Cal.3d 831, 837 [122 Cal.Rptr. 754, 537 P.2d 874]; *Phillipson* v. *Board of Administration* (1970) 3 Cal.3d 32, 45 [89 Cal.Rptr. 61, 473 P.2d 765] [overruled on other grounds, *In re Marriage of Brown* (1976) 15 Cal.3d 838, 851 (126 Cal.Rptr. 633, 544 P.2d 561, 94 A.L.R.3d 164)].) Thus, we must indulge the assumption that the Legislature intended by the phrase "public convenience or necessity" to invoke criteria *different* from those utilized in determining "undue concentration," and to permit the Department on the basis of such criteria to grant an application for issuance or transfer of such a license even where undue concentration is found to exist. This assumption is reflected in the Department's rules, and is not directly challenged by any party to this litigation.

The real problem stems from the fact that neither the statute nor the Department's rules contain any definition of the term "public convenience or necessity" as that term is used in section 23958, nor do they indicate just what criteria (apart from criteria relevant to determination of "undue concentration") are denoted by that concept. And case law from other contexts provides scant guidance. The Supreme Court has observed that the phrase "public convenience *and* necessity" (arguably more restrictive because of the conjunctive) "cannot be defined so as to fit all cases. . . . [Its] meaning must be ascertained by reference to the context, and to the objects and purposes of the statute in which it is found." (*San Diego etc. Ferry Co.* v. *Railroad Com.* (1930) 210 Cal. 504, 511-512 [292 P. 640].)

The Department's licensing authority stems from article XX, section 22 of the state Constitution, which provides in relevant part that the Department "shall have the exclusive power, except as herein provided and in accordance with laws enacted by the Legislature, to license the . . .sale of alcoholic beverages in this State," and that it "shall have the power, in its discretion, to deny, suspend or revoke any specific alcoholic beverages license if it shall determine for good cause that the granting or continuance of such license would be contrary to public welfare or morals. . . ." The Alcoholic Beverage Control Act (§ 23000 et seq.), which contains the licensing provisions at issue here, is declared to be "an exercise of the police powers of the State for the protection of the safety, welfare, health, peace, and morals of the people of the State, to eliminate the evils of unlicensed and unlawful manufacture, selling, and disposing of alcoholic beverages, and to promote temperance in the use and consumption of alcoholic beverages." (§ 23001.) The Legislature has determined that "the public welfare and morals require that there be a limitation on the number of premises licensed for the sale of distilled spirits" (§ 23815), and has prescribed limitations upon the *total* number of premises for which on-sale general licenses may be issued in any *county*. Section 23816 prescribes a limitation of one licensed premise per 2,000 population, or fraction thereof. The determination of population is to be based upon the most recent census (§ 23818), except that where the Department determines that the population of a county has increased since the last census and that "by reason thereof the inhabitants of the county are unjustly and unfairly discriminated against," the Department may issue additional licenses in the same ratio of premises to population. (§ 23821.) Section 23819 makes clear that the Department is not *required* to issue licenses in the statutorily limited ratio, and section 23820 authorizes the Department to make rules

"to carry into effect the provisions of this article, and to restrict the issuance of alcoholic beverage licenses, including seasonal licenses . . . to such number in any county as the department shall determine is in the interest of public welfare and morals, convenience, or necessity." Seasonal licenses are not subject to the statutory limitations (*Johnstone v. State Board of Equalization* (1950) 95 Cal.App.2d 527 [213 P.2d 429]), and the Department has issued regulations providing for issuance of such licenses "only where the demand for alcoholic beverages is warranted by public convenience," defined in terms of influx of population into a recreational area during the seasonal period, and geographical remoteness from other licensed premises. (Cal. Admin. Code, tit. IV, § 55, subds. (b), (c).) Section 23793 proscribes the issuance of new original public premises licenses (except for beer, or beer and wine), and the transfer of public premises licenses from county to county, "unless the applicant can show that substantial public demand cannot otherwise be satisfied."

The Board, in its opinion, reasons with considerable force that these statutory provisions and analogous administrative regulations appear to focus upon the number and location of premises in which alcoholic beverages may be obtained, rather than upon the character of particular premises or expression of public preferences among premises. Moreover, we can envisage serious difficulties in a definition based upon these latter factors. Whether proposed premises will prove more appealing to the public or to segments thereof than existing premises may be difficult to predict, and the number of variables in terms of design and manner of operation which could attract particular segments of the public would seem to be limited only by the imagination of the applicant. If the Department were to proceed in that direction without adopting standards susceptible of meaningful review, the denial of a license for *failure* of the applicant to show public convenience or necessity, might well give rise to meritorious claims of arbitrary administrative action. (Cf. *McPherson v. Employment Division* (1979) 285 Ore. 541 [591 P.2d 1381].) Moreover, as the Board's opinion points out, determining public convenience or necessity on the basis of expressed preferences of association could implicate the agency in highly questionable, if not impermissible, accommodation to social prejudices. (Cf. *Stoumen v. Reilly* (1951) 37 Cal.2d 713 [234 P.2d 696]; see also Civ. Code, §§ 51, 51.5; San Francisco Police Code, § 3301 et seq.)[7]

---

[7]The San Francisco Police Code section 3305 (a) makes it unlawful "[t]o deny, directly or indirectly, any person the full and equal enjoyment of the goods, services,

On the other hand, the Department's action in this case is not without some support in law and reason. Arguably the phrase "undue concentration" as it appears in section 23958 includes all relevant factors pertaining to the number and location of premises in which alcoholic beverages may be obtained, and if that is so then it is difficult to avoid the conclusion that "public convenience or necessity" means something more than that. And, leaving public necessity aside, it is certainly not unreasonable to suggest that public convenience may be served by the character of particular premises. If the mere availability of alcoholic beverages were all that is involved in a bar, the proliferation and apparent success of that institution throughout the ages would be difficult to explain. Persons desiring only to consume alcoholic beverages may presumably satisfy their desire less expensively in other ways. It is a matter of common knowledge and experience, known even to judges, that many if not most people patronize bars for reasons which presumably include but also transcend their thirst for intoxicating liquids, and that these reasons have to do with such matters as companionship, aesthetics, and ambience.[8] It is equally a matter of general knowledge that people's tastes differ widely as to such matters, and that a bar which appeals strongly to one person may be quite unattractive to another. It has been held that in determining whether issuance of a license to a premises located near a church would be "'contrary to public welfare and morals'" the Department may be obliged to take into account such factors as the "attractiveness" of the proposed premises (*Martin* v. *Alcoholic Bev. etc. Appeals Bd.* (1961) 55 Cal.2d 867, 874, 880 [13 Cal.Rptr. 513, 362 P.2d 337]), and that it is entitled to consider not only the kind of business to be conducted on the licensed premises but "the probable manner in which it will be conducted [and] the type of guests who will be its patrons...." (*Koss* v. *Dept. Alcoholic Beverage Control* (1963) 215 Cal.App.2d 489, 495 [30 Cal.Rptr. 219].) While the issue presented in those cases was significantly different from the issue presented here, the decisions do lend some support to the Department's position that matters of aesthetics and predicted mode of operation are not beyond its reach in exercising its discretionary powers.

---

facilities, privileges, advantages, and accommodations of any place of public accommodation" for reasons "wholly or partially based on sexual orientation."

[8]One commentator on life in San Francisco has suggested that "[i]n a very true sense, the cultural and social life of the city is descended from its saloons." (McCabe, The Good Man's Weakness (1974) Chronicle Books, p. 93.) While this may represent a rather specialized form of cynicism, it undoubtedly contains a measure of historical truth.

We are not disposed, and we do not find it necessary, to use this case as a vehicle for propounding a definitive interpretation of the disputed phrase. The potential difficulties of doing so are substantial, as we have noted. Our consideration of the subject is hampered by the fact that the Department, which has primary constitutional and statutory jurisdiction in this area, has not participated in the appeal and has not expressed a view of the matter beyond the limited statement contained in its decision. We must consider the case as presented, and the scope of our review is quite limited. ■ On factual issues, the standard of review is whether there exists substantial evidence to support the Department's underlying findings (*Boreta Enterprises, Inc.* v. *Department of Alcoholic Beverage Control* (1970) 2 Cal.3d 85, 94 [84 Cal.Rptr. 113, 465 P.2d 1], and cases cited therein); and where there is no conflict in the evidence supporting the finding, then "the conclusions or determinations reached present questions of law subject to review for correctness, jurisdictional excess or any resulting abuse of discretion. [Citations.]" (*Rice* v. *Alcoholic Beverage etc. Appeals Bd.* (1979) 89 Cal.App.3d 30, 35 [152 Cal.Rptr. 285].) ■ The Department decided to grant petitioner's application, and "[i]n determining whether facts established by substantial evidence constitute good cause for concluding that issuance of a license will not be contrary to public welfare or morals, the department exercises a discretion adherent to the standard set by reason and reasonable people, bearing in mind that such a standard may permit a difference of opinion upon the same subject. . . . Where the decision is the subject of choice within reason, the department is vested with the discretion of making the selection which it deems proper; its action constitutes a valid exercise of that discretion; and the appeals board or the court may not interfere therewith. [Citations.] Where the determination of the department is one which could have been made by reasonable people, the appeals board or the courts may not substitute a decision contrary thereto, even though such decision is equally or more reasonable in the premises. [Citations.]" (*Koss* v. *Dept. Alcoholic Beverage Control, supra,* 215 Cal.App.2d 489, 496.)[9] ■ The Department's

---

[9]It has been noted that "the Constitution gives the [agency] the 'exclusive power to license' without any specified limitation while it declares the [agency] may deny or revoke a license '. . .if it shall determine for good cause that the granting or continuance of such license would be contrary to public welfare or morals.'" (*Altadena Church* v. *St. Bd. Equalization* (1952) 109 Cal.App.2d 99, 103 [240 P.2d 322].) And we note that section 23958, while mandating denial of an application "if either the applicant or the premises for which a license is applied do not qualify for a license," uses the permissive "may" in describing the Department's authority to deny an application for other stated reasons. (Cf. *Altadena Church* v. *St. Bd. Equalization, supra,* at pp. 103-104.) The state Constitution (art. XX, § 22) contemplates appeals by "any person

finding that the proposed premises "will appeal to all segments of the community including many residents and business people in the area who are presently reluctant to enter other bars in the vicinity" is supported by substantial evidence on this record,[10] and we cannot say that the Department abused its constitutional or statutory discretion in considering that fact as an aspect of public convenience or in concluding that, on balance, the sale of alcoholic beverages at the proposed premises would not be contrary to public welfare or public morals as that term is used in the agency's constitutional mandate.[11] Accordingly, the decision of the Board is reversed, and the decision of the Department is reinstated.

Racanelli, P. J., and Newsom, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied November 26, 1980. Richardson, J., was of the opinion that the petition should be granted.

---

aggrieved...from a decision of the department...issuing...any license" and authorizes limited judicial review of Board orders "upon petition of the director or any party aggrieved by such order," but we have been cited to no judicial opinion which reverses or sustains reversal of the Department's issuance of a license.

[10]In making this determination we exclude from our consideration the testimony of one witness who characterized existing bars as catering to specific groups; the record does not reflect that the Department relied upon that testimony as a basis for its finding, nor was it necessary to do so. We also apply the established principle that while hearsay evidence that would be inadmissible in court may be used for the purpose of explaining or supplementing other evidence in an administrative hearing, it is not sufficient in itself to support a finding. (Gov. Code, § 11513, subd. (c).)

[11]We note that the Department's licensing authority does not negate local control over the character and development of a community through valid zoning ordinances (*Jon-Mar Co. v. City of Anaheim* (1962) 201 Cal.App.2d 832, 837 [20 Cal.Rptr. 350]).