Filed 11/1/22

# CERTIFIED FOR PUBLICATION

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### SECOND APPELLATE DISTRICT

### DIVISION ONE

| | |
|---|---|
| GC BROTHERS ENTERTAINMENT LLC,<br><br>    Petitioner,<br><br>    v.<br><br>ALCOHOLIC BEVERAGE CONTROL APPEALS BOARD,<br><br>    Respondent,<br><br>DEPARTMENT OF ALCOHOLIC BEVERAGE CONTROL,<br><br>    Real Party in Interest. | B316346 |

ORIGINAL PROCEEDING; review of Order No. 48-485515 of the Alcoholic Beverage Control Appeals Board of the State of California. Writ granted.

Blake & Ayaz, Rick A. Blake; Roger Jon Diamond for Petitioner.

Rob Bonta, Attorney General, Chris A. Knudsen, Assistant Attorney General, Gabrielle H. Brumbach and Mark Schreiber, Deputy Attorneys General, for Real Party in Interest.

No appearance for Respondent.

_____

The Department of Alcoholic Beverage Control (Department) revoked a nightclub's liquor license after the club's owner, GC Brothers Entertainment LLC dba The Palms (Petitioner), failed to respond to an accusation alleging several violations of California statutes and regulations. Petitioner appealed the Department's decision to the Alcoholic Beverage Control Appeals Board (Appeals Board), which affirmed it, and now seeks a writ of mandate directing the Department to vacate its decision. We grant the writ.

## BACKGROUND

We take the facts from an accusation the Department filed against Petitioner, accepting them as true for purposes of this proceeding. (Code Civ. Proc., § 431.20, subd. (a) [material allegations not controverted by an answer taken as true for purposes of the action].)

The Palms, a nightclub, holds an on sale general public premises license issued to Petitioner which authorizes the sale of beer, wine and distilled spirits for consumption on the premises. In September 2019, undercover Department personnel discovered several illicit activities taking place at The Palms, and on January 30, 2020, the Department issued a misdemeanor citation

2

to George Cataloiu, Petitioner's president, demanding that he appear before the superior court by June 15, 2020.

On September 11, 2020, the Department instituted a 40-count accusation against Petitioner, alleging it exceeded its license privileges by knowingly permitting the illegal sale, possession and consumption of alcohol and controlled substances on its licensed premises, and permitting several of its employees to violate the Health and Safety Code, Business and Professions Code, and California Code of Regulations by: consuming alcohol in unlicensed areas; exposing their genitalia and performing simulated sex acts; furnishing cocaine and drug paraphernalia to club patrons; soliciting the purchase of alcohol for their own consumption; and smoking or ingesting cannabis on the premises.

On September 11, 2020, the Department served the accusation on Petitioner by certified mail to The Palms' address pursuant to California Code of Regulations section 145 (Rule 145), which prescribes that notices will be mailed to the premises for which a license is issued unless the licensee requests otherwise. United States Postal Service (USPS) tracking information showed the accusation was delivered to the licensed premises on September 14, 2020, at 10:05 a.m.

Along with the accusation, the Department served Petitioner notification that it could either settle the controversy and submit to possible revocation of its alcohol license or dispute the violations by requesting a hearing before an administrative law judge (ALJ). The Department further notified Petitioner that if it took no action within 15 days all charges in the accusation would be sustained and found proven, an administrative default

3

judgment would be entered, and the Department would impose penalties commensurate with the charges.

Petitioner failed to respond.

On November 23, 2020, the Department adopted a "Decision Following Default," finding Petitioner was properly served with the Accusation but made no timely response, the allegations of the accusation were true, and the Department was authorized to suspend or revoke Petitioner's license. The Department found that continuance of Petitioner's license would be "contrary to public welfare and morals," and ordered that the license be revoked effective immediately.

The Department served the decision on Petitioner by certified mail to The Palms' address, USPS tracking information showing it was delivered to the licensed premises on November 28, 2020, at 9:51 a.m.

On December 2, 2020, Petitioner filed a one-page motion with the Department, unsupported by any evidence, to vacate the default, arguing that Petitioner never received the September 11 accusation.[1]

The Department opposed the motion, arguing no good cause existed to vacate the default because the accusation was

---

[1] Petitioner's motion read in its entirety as follows: "GC Brothers Entertainment, LLC dba Palms hereby moves the ABC to set aside and vacate its default judgment. George Cataloiu did not receive notice of any proceeding. He did not receive any Accusation or any other document regarding revocation. Accordingly, GC Brothers Entertainment, LLC hereby respectfully requests the ABC to set aside the decision following default. Licensee never received any Accusation or notice of any filing. [¶] Moving party needs additional time to supply more evidence if that is necessary. The Club in Signal Hill has been

4

sent to the address Petitioner had provided in its license application, and by Petitioner's own admission that The Palms had been closed for months before service of the accusation, Petitioner had been afforded plenty of time to update its address pursuant to Rule 145 but chose not to do so.

On December 16, 2020, Petitioners belatedly filed a declaration by Cataloiu to support its motion. In it, Cataloiu argued that the accusation should not have been mailed to The Palms in the first instance because Department staff knew the club had been closed since March 2020 due to the Covid pandemic. Instead, the accusation should have been sent to Cataloiu or his attorney, both of whom were known to Department staff as a result of the January 2020 misdemeanor proceedings. Cataloiu implied but failed explicitly to state that he never received the September 11 accusation. He complained it was "unconscionable that a government agency such as the Department of Alcoholic Beverage Control would act so unfairly to try to take advantage of a miscue."

On December 21, 2020, the Department filed a declaration by Bradley Beach, the supervising agent in charge of the Department's Lakewood district office, who stated that when the Department notified him that Petitioner failed to respond to the accusation, he telephoned Petitioner at the two numbers the

---

closed since March 2020 because of the Covid 19 pandemic. While closed no employees went by the club. [¶] The ABC knew that attorney Roger Jon Diamond represented the Establishment. No Accusation was sent to him either."

5

Department had on file. There was no answer at the first number, and the mailbox for the second was full.

On June 7, 2021, the Department found that Petitioner's attorney's allegation—in the motion to vacate the default—to the effect that Petitioner failed to receive the accusation did not constitute evidence of that fact. The Department therefore denied Petitioner's motion.

Petitioner appealed this decision to the Appeals Board. In its briefs in support of the appeal, Petitioner challenged Beach's declaration about having attempted to telephone Petitioner, denied that delivery of mail was possible at The Palms when it was closed, and argued that an employee arriving at the club to retrieve office items found no accusation there. Petitioner requested that the Appeals Board order the Department to hold a hearing concerning Petitioner's nonreceipt of the accusation. Petitioner further argued that the interests of leniency and "[r]estoring the credibility of a governmental entity such as the [Department]" constituted good cause to vacate the default considering the chaos caused by the pandemic, especially given that no prejudice would result because Petitioner moved to vacate the default only a few days after it was issued.

After the appeal was fully briefed and submitted to the Appeals Board, and two days prior to the hearing on the matter, Petitioner submitted the declaration of Lambert Adouki, a consultant Petitioner hired to investigate mail delivery to The Palms, who stated he had been informed by Ayaz Brianna Flores, a supervisor at the Signal Hill USPS station, that the mail carrier who allegedly delivered the accusation to The Palms had

informed Flores that the mail was not in fact delivered because the business was closed.

On October 19, 2021, the Appeals Board affirmed the Department's order denying Petitioner's motion to vacate the default, and denied Petitioner's request to remand the matter to the Department for consideration of new evidence.

Petitioner timely seeks a writ of mandate directing the Appeals Board and Department to reverse their decisions. In its petition, Petitioner admits "there was no need for Petitioner to update their mailing address as Petitioner regularly checked their mail."

## DISCUSSION

Petitioner contends the Appeals Board erred in affirming the Department's order denying relief from default, and requests that we either order the Appeals Board to vacate its order, vacate the *Department's* order denying relief from default, or vacate the Department's initial order finding petitioner to be in default.

## A.     Pertinent Law

The California Constitution grants the Department "exclusive power" to license the sale of alcoholic beverages "in accordance with laws enacted by the Legislature." (Cal. Const., art. XX, § 22.) The Department may, "in its discretion, . . . deny, suspend or revoke any specific alcoholic beverage license if it shall determine for good cause that the granting or continuance of such license would be contrary to public welfare or morals, or that a person seeking or holding a license has violated any law prohibiting conduct involving moral turpitude." (*Ibid.*; see

*Rondon v. Alcoholic Beverage Control Appeals Bd.* (2007) 151 Cal.App.4th 1274, 1281.)

Any party aggrieved by the Department's decision to revoke a license may appeal that decision to the Appeals Board. (Cal. Const., art. XX, § 22; Bus. & Prof. Code, §§ 23081, 23084.)[2] The Appeals Board's scope of review is narrow: it "shall not receive evidence in addition to that considered by the [D]epartment," and its review "shall be limited to the questions whether the [D]epartment has proceeded without or in excess of its jurisdiction, whether the [D]epartment has proceeded in the manner required by law, whether the decision is supported by the findings, and whether the findings are supported by substantial evidence in the light of the whole record." (Cal. Const., art. XX, § 22; § 23084; see *Department of Alcoholic Beverage Control v. Alcoholic Beverage Control Appeals Bd.* (2002) 100 Cal.App.4th 1066, 1073 (*Deleuze*).) The Appeals Board may remand a matter for reconsideration if it finds the Department either erroneously refused to consider relevant evidence or failed to consider evidence that could not have been produced despite the exercise of reasonable diligence. (*Deleuze*, at p. 1073.)

Any party aggrieved by the Appeals Board's final decision may file a petition for writ of review with "the court of appeal for the appellate district in which the proceeding arose." (§ 23090; see *Deleuze, supra,* 100 Cal.App.4th at p. 1071.) The appellate court reviews the Department's decision, not the Appeals Board's decision, and exercises the same limited review as does the

---

[2] Undesignated statutory references will be to the Business and Professions Code.

Appeals Board. (§ 23090.2; *Kirby v. Alcoholic Bev. etc. Appeals Bd.* (1972) 7 Cal.3d 433 (*Kirby*); *Deleuze*, at p. 1072.)

Our review "is quite limited." (*Sepatis v. Alcoholic Bev. etc. Appeals Bd.* (1980) 110 Cal.App.3d 93, 102 (*Sepatis*).) "Neither this court nor the [Appeals] Board may ' "disregard or overturn a finding of fact of the Department . . . for the reason that it is considered that a contrary finding would have been equally or more reasonable." ' " (*Kirby*, *supra*, 7 Cal.3d at p. 436; see § 23090.3 ["The findings and conclusions of the [D]epartment on questions of fact are conclusive and final and are not subject to review"].)

"Of course, the discretion exercised by the Department under section 22 of article XX of our Constitution ' "is not absolute but must be exercised in accordance with the law, and the provision that it may revoke [or deny] a license 'for good cause' necessarily implies that its decisions should be based on sufficient evidence and that it should not act arbitrarily in determining what is contrary to public welfare or morals.' " [Citations.] Nevertheless, it is the Department, and not the [Appeals] Board or the courts, which must determine whether 'good cause' exists for denying a license upon the ground that its issuance would be contrary to public welfare or morals." (*Kirby*, *supra*, 7 Cal.3d at pp. 436-437.) "As long as there is substantial evidence to support the Department's determination, as long as the decision is a reasonable one under the evidence, the decision must be upheld as a valid exercise of the Department's discretion conferred by the Constitution." (*Department of Alcoholic Bev. Control v. Alcoholic Bev. etc. Appeals Bd.* (1982) 136 Cal.App.3d 315, 318 (*Kolender*); see also *Department of Alcoholic Bev. Control*

*v. Alcoholic Bev. etc. Appeals Bd.* (1982) 133 Cal.App.3d 814, 817; *Sepatis*, *supra*, 110 Cal.App.3d at pp. 102-103.)

Where a licensee is required to file his or her address with the licensing agency, service by mail shall be effective if a certified letter containing the accusation and the accompanying material is addressed and mailed to the party at the licensed premises. (Gov. Code, § 8311; Cal. Code Regs., tit. 4, § 145.) The act of mailing by certified mail effectuates service, and proof of service in the form of a return receipt signed by party or other acknowledgment of receipt by a party is not required. (*Evans v. Department of Motor Vehicles* (1994) 21 Cal.App.4th 958, 970; see Evid. Code, § 641 [a letter correctly addressed and properly mailed is presumed to have been received in the ordinary course of mail].) Only notice "reasonably calculated" to apprise the licensee of impending action is required. (*Evans*, at p. 970; *Jones v. Flowers* (2006) 547 U.S. 220, 226; *Mullane v. Central Hanover Bank & Trust Co.* (1950) 339 U.S. 306, 319.)

## B.    Application

### 1.    The Accusation was Properly Served

Here, it is undisputed that the Department sent its accusation by certified mail to the address Petitioner had registered with the Department. Petitioner offered no evidence to rebut that the accusation was mailed to The Palms. Although Petitioner's attorney argued that Cataloiu failed to receive the accusation, an attorney's statement in a memorandum of points and authorities does not constitute evidence. (*In re Marriage of Pasco* (2019) 42 Cal.App.5th 585, 591.)

Cataloiu himself nowhere stated in his declaration that mail containing the accusation was not received at The Palms, and Petitioner admits that Cataloiu regularly checked the mail at

10

the club while it was closed.  In any event, service by mail satisfied due process even if the accusation was never received, and supported the Department's decision to find Petitioner to be in default, and thereupon to revoke its license.

Petitioner argues that the Adouki declaration shows that the accusation was never received at The Palms.  But this declaration was offered to the Appeals Board, not the Department.  Our review is only of the Department's decision, and considers only the evidence it had before it.  (§ 23090.2; *Department of Alcoholic Beverage Control v. Alcoholic Beverage Control Appeals Bd.* (2005) 128 Cal.App.4th 1195, 1205.)

**2.     The ALJ Abused His Discretion by Denying a Hearing**

Once the Department issues an accusation against a licensee, the licensee may file a notice of defense and request a hearing, and "shall be entitled to a hearing on the merits . . . and the notice shall be deemed a specific denial of all parts of the accusation . . . not expressly admitted."  (Gov. Code, § 11506, subd. (c).)  "The notice of defense" "need not be verified or follow any particular form."  (*Id.* at subd. (d).)

If the respondent either fails to file a notice of defense to an accusation or to appear at the hearing, the Department may act based upon its own evidence.  (Gov. Code, § 11520, subd. (a).)

Notwithstanding the respondent's default, the Department or the ALJ, "before a proposed decision is issued, has discretion to grant a hearing on reasonable notice to the parties."  (Gov. Code, § 11520, subd. (b).)  The ALJ may order the respondent to pay the Department's reasonable expenses incurred "as a result of the respondent's failure to appear at the hearing."  (*Ibid.*)

11

"Within seven days after service on the respondent of a decision based on the respondent's default, the respondent may serve a written motion requesting that the decision be vacated and stating the grounds relied on.  The agency in its discretion may vacate the decision and grant a hearing on a showing of good cause.  As used in this subdivision, good cause includes, but is not limited to, any of the following:  [¶] (1) *Failure of the person to receive notice* served pursuant to Section 11505[; ¶] (2) Mistake, inadvertence, surprise, or excusable neglect."  (Gov. Code, § 11520, subd. (c), italics added.)

There is longstanding public policy favoring the adjudication of cases on the merits, and the law requires a reviewing body to scrutinize more carefully an order denying relief from default than an order granting relief and permitting a case to go forward.  (See Code Civ. Proc., § 583.130 ["Except as otherwise provided by statute . . . the policy favoring trial or other disposition of an action on the merits [is] generally to be preferred over the policy that requires dismissal for failure to proceed with reasonable diligence in the prosecution of an action"]; see generally *Elston v. City of Turlock* (1985) 38 Cal.3d 227, 233; see also *Denham v. Superior Court* (1970) 2 Cal.3d 557, 566; *Crown Coach Corp. v. Superior Court* (1972) 8 Cal.3d 540, 548; *McDonough Power Equipment Co. v. Superior Court* (1972) 8 Cal.3d 527, 538 (dis. opn. of Peters, J.).)

This power includes the discretion to liberally construe an unclear motion to set aside a default.  (See *Miller v. Dussault* (1972) 26 Cal.App.3d 311, 319.)

Here, the statutory scheme governing review in licensing matters often requires no diligence at all on the part of the licensee.  For example, before the Department has issued a

12

decision on an accusation, subdivision (b) of Government Code section 11520 authorizes the ALJ to grant a licensee relief even if the licensee does not ask for it.

After the Department has issued a decision, subdivision (c) of Government Code section 11520 authorizes the ALJ to grant the licensee relief from default for the sole reason that the licensee failed to receive notice of the accusation, whether or not such failure resulted from the licensee's lack of diligence.

In this manner the licensing scheme is more liberal than that governing, for example, defaults (see Code of Civ. Proc., § 473) and dismissals for lack of prosecution (see Code of Civ. Proc., § 581).

After the Department issues its decision, the only requirement for relief from default is that there be a "showing" of good cause. (Gov. Code, § 11520, subd. (c).) But even the requirement of a showing is more relaxed under the licensing law than under the Code of Civil Procedure.

Although the licensee must serve a "written motion" requesting that the decision be vacated, the only express statutory requirement for the motion itself is that the licensee "stat[e] the grounds relied on." (Gov. Code, § 11520, subd. (c).) There is no express requirement that the motion be accompanied by any evidentiary showing. The ALJ's discretion to vacate the Department's decision and grant a hearing could be satisfied, for example, after issuance of an order to show cause (OSC) and further proceedings.

Here, the ALJ and Board focused their decisions on respondent's lack of diligence—its failure to update its address, failure to check its mail, and failure to support its motion for relief with sufficient evidence to justify relief.

13

For example, the ALJ's only finding was that respondent failed to "assert[] that the accusation was not properly served at the address on record with the Department." Accordingly, the ALJ found, "No good cause has been established to set aside the Decision."

But respondent need never make such a showing, because good cause exists if the licensee merely failed *to receive* the accusation; there is no requirement that the respondent show the accusation was not properly served. (Gov. Code, § 11520, subd. (c).)

Similarly, the Board found that "Appellant offered no factual basis to support the existence of good cause in its Motion to Vacate the Decision Following Default. Accordingly, it did not constitute an abuse of discretion, nor was it arbitrary or capricious, for the Department to deny that motion for the failure to make the requisite showing of good cause. . . . [T]he Department properly denied the request."

Although the Board correctly identified the issue—whether respondent showed good cause, i.e., showed lack of actual receipt of the accusation—it confusingly (1) weighed the evidence—the presumption that mail duly served is received versus respondent's contention (which the Board found "stretches credulity") that it was not received—itself; (2) found that respondent "offered no factual basis" to support good cause; and (3) found that the ALJ properly denied respondent's motion for failure to show good cause.

But first, it was not the Board's province to weigh evidence never considered or ruled upon by the ALJ. Second, respondent *did* offer a factual basis supporting good cause—it contended it failed to receive the accusation. And third, the ALJ did not deny

14

respondent's motion for failure to show good cause but for failure to demonstrate the accusation was not properly served, which as discussed above was an irrelevant issue.

Respondent at all times offered to show lack of actual receipt, but the Department and the ALJ insisted, with no clear statutory basis, that the showing be made immediately upon the filing of the motion for relief.

Because such a motion must be filed very quickly, within seven days after service of a decision based on a default, it is unreasonable to require in every instance that the respondent marshal its evidence in time for the motion, especially given that the statute does not explicitly require that the evidence accompany the motion. What if the respondent's counsel or a knowledgeable party is not immediately available, or if needed evidence cannot be immediately obtained? We think the fairer (and statutorily resonant and permissible) procedure would be for the ALJ to treat a motion for relief from default like it treats an initial notice of defense, i.e., as a general denial to be supported by evidence later, for example upon the receipt of an order to show cause.[3]

We therefore hold that the licensing scheme and strong state policy in favor of resolving cases on the merits grant an ALJ discretion to issue an OSC when he or she receives even an arguably deficient motion for relief from default. It thus runs

---

[3] To be granted a hearing in the first instance, a licensee need not state it has any defense to an accusation (much less specify the defense), but need only file a "notice of defense," which will be construed as a denial. (Gov. Code, § 11506, subd. (a).) "The notice of defense" "need not be verified or follow any particular form." (*Id*. at subd. (d).)

contrary to the spirit of the licensing scheme to insist that a licensee present its complete and best case for relief within seven days of service of a notice of default.

Here, the ALJ not only apparently believed he had no discretion to liberally construe respondent's motion for relief, but also found that respondent's failure to establish an irrelevant issue—proper service—constituted a failure to show good cause for relief. The ALJ's failure to appreciate the scope of his discretion and application of an improper standard requires that we remand the matter to afford the ALJ an opportunity to exercise his discretion in the first instance and, applying the proper standard, determine whether petitioner has shown good cause for relief from default.

## DISPOSITION

The writ is granted. The ALJ is directed to determine whether Petitioner can show good cause for relief from default. Each side is to bear its own costs.

CERTIFIED FOR PUBLICATION


CHANEY, J.

We concur:


ROTHSCHILD, P. J.


BENDIX, J.


16