[Civ. No. 64881. Second Dist., Div. Two. July 14, 1982.]

DEPARTMENT OF ALCOHOLIC BEVERAGE CONTROL,
Petitioner, v.
ALCOHOLIC BEVERAGE CONTROL APPEALS BOARD,
Respondent;
JUAN R. DIEZ, Real Party in Interest.

COUNSEL

George Deukmejian, Attorney General, and Marilyn K. Mayer, Deputy Attorney General, for Petitioner.

Floyd R. Mitzner for Respondent.

Andreas Biegel, Jr., for Real Party in Interest.

OPINION

**GATES, J.**—In this case we are asked to review a decision of the Alcoholic Beverage Control Appeals Board (Board) which reversed a decision of the Department of Alcoholic Beverage Control (Department) denying a petition for an off-sale beer and wine license.

In February 1980, real party in interest John R. Diez, doing business as El Zorro (Applicant), filed an application for an off-sale beer and wine license for premises located at 4417 Lennox Boulevard in Lennox. The Los Angeles County Sheriff protested issuance of the requested license, asserting, "another license in this area would only add to the oversaturation, and increase the police problems." The Department thereafter issued a notice denying the application and Applicant filed a petition for an evidentiary hearing on the question of whether the license should be granted.

After the matter was heard on February 27, 1981, a proposed decision was issued in which the administrative law judge made certain findings of fact and recommended the protest be sustained and the petition denied. The Department adopted her decision and Applicant appealed to the Board, which reversed the decision, finding the Department had not established good cause for denial of the license.

■ "[I]t is the Department, and not the Board or the courts, which must determine whether 'good cause' exists for denying a license upon the ground that its issuance would be contrary to the public welfare or morals. [Citations.]" (*Kirby* v. *Alcoholic Bev. etc. Appeals Bd.* (1972) 7 Cal.3d 433, 437 [102 Cal.Rptr. 857, 498 P.2d 1105].) The reviewing body determines whether or not the Department acted arbitrarily in making its decision. If the decision is without reason under the evidence, the action of the Department constitutes an abuse of discretion and may be set aside. But where the decision is the subject of a choice within reason, the Department is vested with the discretion of making the selection which it deems proper, its action is within the scope of a valid exercise of the constitutionally conferred discretion (Cal. Const., art. XX, § 22),[1] and neither the Board nor the courts may interfere therewith. (*Kirby* v. *Alcoholic Bev. etc. App. Bd.* (1968) 261 Cal.App. 2d 119, 122 [67 Cal.Rptr. 628]; *Torres* v. *Dept. Alcoholic Bev. Control* (1961) 192 Cal.App.2d 541, 544-545 [13 Cal.Rptr. 531].)

[1]Section 22 provides in relevant part: "The Department of Alcoholic Beverage Control shall have the exclusive power, except as herein provided and in accordance with laws enacted by the Legislature, to license the manufacture, importation and sale of alcoholic beverages in this State, and to collect license fees or occupation taxes on account thereof. The department shall have the power, in its discretion, to deny, suspend or revoke any specific alcoholic beverage license if it shall determine for good cause that the granting or continuance of such license would be contrary to public welfare or morals, or that a person seeking or holding a license has violated any law prohibiting conduct involving moral turpitude. It shall be unlawful for any person other than a licensee of said department to manufacture, import or sell alcoholic beverages in this State. . . ."

■ With respect to the matter currently before us, the Department concluded the issuance of an off-sale license would be contrary to public welfare and morals in that it would add to an undue concentration of licenses (Bus. & Prof. Code, § 23958[2]; Cal. Admin. Code, tit. 4, § 61.3[3]) and "the premises are located in a crime reporting district which has 20 percent greater number of reported crimes and arrests than the average number of reported crimes and arrests for each crime reporting district within the Los Angeles County Sheriff Department's jurisdiction for unincorporated area; and the population of census tract no. 6018 [where

---

[2]Business and Professions Code section 23958 provides: "Upon receipt of an application for a license or for a transfer of a license and the applicable fee, the department shall make a thorough investigation to determine whether the applicant and the premises for which a license is applied qualify for a license and whether the provisions of this division have been complied with, and shall investigate all matters connected therewith which may affect the public welfare and morals. The department shall deny an application for a license or for a transfer of a license if either the applicant or the premises for which a license is applied do not qualify for a license under this division.

"The department further may deny an application for a license if issuance of such license would tend to create a law enforcement problem, or if issuance would result in or add to an undue concentration of licenses and the applicant fails to show that public convenience or necessity would be served by such issuance.

[3]Section 61.3 reads as follows: "(a) For the purpose of Section 23958 of the Alcoholic Beverage Control Act, undue concentration includes, but is not limited to, conditions set forth below:

"The applicant premises for an original or premises-to-premises transfer of any retail license are located in a crime reporting district which has a 20% greater number of reported crimes, as defined below, than the average number of reported crimes as determined from all crime reporting districts within the jurisdiction of the local law enforcement agency if the following conditions exist:

"(1) As to on-sale retail license applications, the ratio of on-sale retail licenses to population in the census tract or census division in which the applicant premises are located exceeds the ratio of on-sale retail licenses to population in the county in which the applicant premises are located.

"(2) As to off-sale retail license applications, the ratio of off-sale retail licenses to population in the census tract or census division in which the applicant premises are located exceeds the ratio of off-sale retail licenses to population in the county in which the applicant premises are located.

"Notwithstanding the above, the department may issue a license if the applicant shows that public convenience or necessity would be served by such issuance.

"(b) Definition of Terms and Data Sources. The following definitions and data sources shall govern the construction and application of this rule:

"(1) 'Reporting Districts' mean geographical areas within the boundaries of a single governmental entity (city or the unincorporated area of a county), which reporting districts are identified by the local law enforcement agency in the compilation and maintenance of statistical information on reported crimes and arrests.

"(2) 'Reported Crimes' are the most recent yearly compilation by the local law enforcement agency of reported offenses of criminal homicide, forcible rape, robbery, aggravated assault, burglary, larceny—theft, motor vehicle theft, and such offenses shall be combined with all arrests for other crimes, felonies and misdemeanors, except traffic citations.

"(3) 'Population Within the Census Tract or Census Division' means the population

the applicant-premises are located] permits only four (4) off-sale retail licenses."[4]

The Department further determined that, "[a]lthough applicant-premises sell a unique variety and assortment of Cuban grocery items, it was not established that public convenience and necessity require the issuance of a license to the applicant-premises, in that customers at the applicant-premises may easily avail themselves of alcoholic beverages from licensees in close proximity to the applicant-premises."[5]

The foregoing conclusions, which were supported by the Department's findings and by substantial evidence in the record, constitute good cause for its determination. The Board's view that the existence of the facts specified in section 61.3, title 4, of the California Administrative Code, does not provide a basis upon which to deny a license is mistaken. While, of course, not mandatory, the Department's discretionary decision to rely upon such a showing was proper. (See *Martin* v. *Alcoholic Bev. etc. Appeals Bd.* (1961) 55 Cal.2d 867, 875 [13 Cal.Rptr. 513, 362 P.2d 337].)

---

as determined by the most recent United States decennial or special census. Such population determination shall not operate to prevent an applicant from establishing that an increase of resident population has occurred within the census tract or census division.

"(4) 'Population in the County' shall be determined by the annual population estimate for California counties published by the Population Research Unit, State Department of Finance.

"(5) 'Retail Licenses' shall include the following:

"(A) Off-sale Retail Licenses: Types 20 (off-sale beer and wine) and 21 (off-sale general).

"(B) On-sale Retail Licenses: All retail on-sale licenses except Types 43 (on-sale beer and wine for train), 44 (on-sale beer and wine for fishing party boat), 45 (on-sale beer and wine for boat), 46 (on-sale beer and wine for airplane), 53 (on-sale general for train and sleeping car), 54 (on-sale general for boat), 55 (on-sale general for airplane), 56 (on-sale general for vessel of more than 1,000 tons burden), and 62 (on-sale general bona fide public eating place intermittent dockside license for vessels of more than 15,000 tons displacement).

"(6) The number of retail licenses in the county shall be determined by the most recent yearly retail license count published by the department in its Procedure Manual, Volume I, P. 2.

"This rule does not apply where the premises have been licensed and operated with the same type license within 90 days of the application."

[4]Ten such licenses had been granted as of the date of Applicant's administrative hearing.

[5]Eight licensed premises were located within 1,000 feet of the applicant-premises. Two of them, each 300 pedestrian feet from those premises, "are ... small family-type grocery stores," one of which "specialized in Latin American grocery items, although it does not have as large or varied a selection of Cuban foods as the applicant." A third licensee, a large food market, is located just 190 pedestrian feet from the applicant-premises.

Section 61.3, differs markedly from statutory provisions such as Business and Professions Code section 23789 which provides: "The department is specifically authorized to refuse the issuance, other than renewal or ownership transfer, of on-sale retail licenses for premises located within the immediate vicinity of churches and hospitals.

"The department is further specifically authorized to refuse the issuance, other than renewal or ownership transfer, of on-sale retail licenses for premises located within at least 600 feet of schools and public playgrounds. This distance shall be measured pursuant to rules of the department."

■ Manifestly, mere propinquity to a church or a school does not in and of itself automatically establish the good cause required to deny a license. (See generally *Martin* v. *Alcoholic Bev. etc. Appeals Bd., supra*, 55 Cal.2d 867, 875; *Reimel* v. *Alcoholic Bev. etc. App. Bd.* (1967) 255 Cal.App.2d 40, 49 [62 Cal.Rptr. 778]; *Koss* v. *Dept. Alcoholic Beverage Control* (1963) 215 Cal.App.2d 489, 495 [30 Cal.Rptr. 219].) ■ By parity of reasoning, it could rationally be urged that a mere concentration of licenses in a given area, without more, would be similarly insufficient. However, when *in addition thereto* it is established that the area in question is one wherein there is an unusually high number of crimes, and that the affected law enforcement agencies object on this ground, it is not necessary in every instance to introduce specific evidence reestablishing the very fact that presumably led to the adoption of Rule 61.3 in the first instance, i.e., that there is a symbiotic relationship between crime and the increased consumption of alcohol in a given locale that results from an excessive number of competing sources of distribution. (See *Torres* v. *Dept. Alcoholic Bev. Control* (1961) 192 Cal.App.2d 541, 548 [13 Cal.Rptr. 531].)

The Board's assertion that the facts calling Rule 61.3 into play must be supplemented by *additional evidence* demonstrating that the *particular* license, if issued, would *itself* aggravate the existing crime problem, is unpersuasive. Business and Professions Code section 23958 makes the tendency of an applicant "to create a law enforcement problem" a ground for denial quite separate and distinct from that relating to the "undue concentration of licenses." (See fn. 2.) That is to say, if a showing were made that the individual licensee would create a law enforcement problem, the plenitude or paucity of neighboring licenses would be irrelevant.

Furthermore, unlike the situation in *Martin* v. *Alcoholic Bev. etc. Appeals Bd., supra,* 55 Cal.2d 867, 873-874, where the Department had concluded that it was required to deny a license merely because of the proximity of a church, even though the church had not protested and a police captain and a school teacher had spoken in favor of the applicant, a restaurant, section 61.3 expressly permits a license to be issued in even an impacted crime district if "public convenience or necessity would be served by such issuance." (Bus. & Prof. Code, § 23958; *Sepatis* v. *Alcoholic Bev. etc. Appeals Bd.* (1980) 110 Cal. App.3d 93, 102 [167 Cal.Rptr. 729].) Here the Department fully exercised its judgment and discretion and determined that neither necessity nor public convenience were shown.

The decision of the Board is reversed and that of the Department reinstated.

Compton, Acting P. J., and Beach, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied October 28, 1982.