[Civ. No. 26950. Fourth Dist., Div. One. Oct. 5, 1982.]

DEPARTMENT OF ALCOHOLIC BEVERAGE CONTROL,
Petitioner, v.
ALCOHOLIC BEVERAGE CONTROL APPEALS BOARD,
Respondent;
W. B. KOLENDER, as Chief of Police, etc., et al., Real Parties
in Interest.

316

## COUNSEL

George Deukmejian, Attorney General, and Alan S. Meth, Deputy Attorney General, for Petitioner.

William B. Eley for Respondent.

Hinchy, Witte, Wood, Anderson & Hodges and William R. Winship, Jr., for Real Parties in Interest.

## OPINION

**BROWN (Gerald), P. J.**—We review a decision of the Alcoholic Beverage Control Appeals Board (Board) which reversed a decision of the Department of Alcoholic Beverage Control (Department) denying a petition for an off-premises liquor license.

King O. Taylor, Sr., doing business as Kings' Liquor & Deli #2 (applicant), applied to the Department on January 27, 1981, for a new license for the premises at 9353 Clairemont Mesa Boulevard, San Diego. After protest was filed by the police, the application was denied because the reporting area had 20 percent more crimes than the average in the city as a whole and the ratio of liquor licenses to population was greater than in the county as a whole. The applicant petitioned for

a hearing, and after a hearing the Department's decision was sustained. Applicant appealed to the Board, which, after briefs and oral argument, reversed the Department saying that to deny a license the Department must find evidence, in addition to that showing the standards of section 61.3 had been met, why the operation of the proposed premises if issued a license would aggravate existing crime problems.

We must determine whether it is the Department or the Board which has the authority to set out guidelines and interpret regulations concerning the grant or denial of liquor licenses. ■ Clearly, in this instance, the California Constitution[1] confers the exclusive power to regulate the issuance of licenses to the Department. It is the Department which has the responsibility of determining whether an applicant's request is contrary to the public morals and welfare and should therefore, for good cause, be denied (*Kirby* v. *Alcoholic Bev. etc. Appeals Bd.* (1972) 7 Cal.3d 433, 437 [102 Cal.Rptr. 857, 498 P.2d 1105]). The Board acts as a reviewing body and determines whether the Department has abused its discretion or acted arbitrarily in coming to its decision. As long as there is substantial evidence to support the Department's determination, as long as the decision is a reasonable one under the evidence, the decision must be upheld as a valid exercise of the Department's discretion conferred by the Constitution.

■ Here, the Department found the issuance of a license would be contrary to the public welfare because of an undue concentration of licenses. Under Business and Professions Code section 23958,[2] upon

---

[1]California Constitution, article XX, section 22, provides in relevant part: "The Department of Alcoholic Beverage control shall have the exclusive power, except as herein provided and in accordance with laws enacted by the Legislature, to license the manufacture, importation and sale of alcoholic beverages in this State, and to collect license fees or occupation taxes on account thereof. The department shall have the power, in its discretion, to deny, suspend or revoke any specific alcoholic beverage license if it shall determine for good cause that the granting or continuance of such license would be contrary to public welfare or morals, or that a person seeking or holding a license has violated any law prohibiting conduct involving moral turpitude. It shall be unlawful for any person other than a licensee of said department to manufacture, import or sell alcoholic beverages in this State."

[2]Business and Professions Code section 23958 provides: "Upon receipt of an application for a license or for a transfer of a license and the applicable fee, the department shall make a thorough investigation to determine whether the applicant and the premises for which a license is applied qualify for a license and whether the provisions of this division have been complied with, and shall investigate all matters connected therewith which may affect the public welfare and morals. The department shall deny an application for a license or for a transfer of a license if either the applicant or the

receipt of an application, the Department is to make an investigation and may deny a license if its issuance "would result in or add to an undue concentration of licenses and the applicant fails to show that public convenience or necessity would be served by such issuance." California Administrative Code title 4, section 61.3[3] states an "undue concentration" exists when, as is the case stipulated to here, the reported crimes and the ratio of licenses to population exceed the specified averages.

Is section 61.3 reasonable? The Department, in the exercise of its rule-making power, has defined undue concentration purely in statistical terms. However, it is not just the number of licenses in a given area that is important; rather, it is the low number of persons per license combined with an unusually high crime rate which set the stage for possible denial of a license. These two figures reflect the belief there is a relationship between crime and increased accessibility to alcohol, an accessibility which is fostered by increased competition (see *Torres* v. *Dept. Alcoholic Bev. Control* (1961) 192 Cal.App.2d 541, 548 [13 Cal.Rptr. 531]). Yet, if the applicant in an area where there is an undue concentration of licenses can show the public convenience or necessity so dictates, he can still get a license. In this way, the Department has balanced the need for an easy method of determining when there is an undue concentration of liquor licenses in an area with the need under some circumstances for the license to be granted, notwithstanding the statistics.

premises for which a license is applied do not qualify for a license under this division.

"The department further may deny an application for a license if issuance of such licence would tend to create a law enforcement problem, or if issuance would result in or add to an undue concentration of licenses and the applicant fails to show that public convenience or necessity would be served by such issuance."

[3]Section 61.3 reads: "(a) For the purpose of Section 23958 of the Alcoholic Beverage Control Act, undue concentration includes, but is not limited to, conditions set forth below:

"The applicant premises for an original or premises-to-premises transfer of any retail license are located in a crime reporting district which has a 20% greater number of reported crimes, as defined below, than the average number of reported crimes as determined from all crime reporting districts within the jurisdiction of the local law enforcement agency if the following conditions exist:

"(1) As to on-sale retail license applications, the ratio of on-sale retail licenses to population in the census tract or census division in which the applicant premises are located exceeds the ratio of on-sale retail licenses to population in the county in which the applicant premises are located. [¶] (2) As to off-sale retail license applications, the ratio of off-sale retail licenses to population in the census tract or census division in which the applicant premises are located exceeds the ratio of off-sale retail licenses to population in the county in which the applicant premises are located.

"Notwithstanding the above, the department may issue a license if the applicant shows that public convenience or necessity would be served by such issuance."

The value of section 61.3 in making determinations whether a license is to be issued depends, of course, on how well it monitors undue concentration of licenses. In most instances the mere existence of facts which are deemed to constitute undue concentration under section 61.3 is sufficient for denial of a license without any showing that this particular license would adversely affect this particular neighborhood.[4] (*Department of Alcoholic Bev. Control* v. *Alcoholic Bev. etc. Bd.* (1982) 133 Cal.App.3d 814 [184 Cal.Rptr. 367].) This is because additional liquor licenses in an area where there are already a high number of licenses compared with the population and an unusually high crime rate are almost always detrimental to public morals and welfare. Therefore, no facts other than those establishing a statistical deviation from section 61.3 are necessary.

However, in those rare instances where, because of the size of a reporting or census tract or the vagaries of geographical topography, the applicant's location, albeit located in a reporting area subject to 61.3, is itself free of the adversities dictating a denial under section 61.3, then it is necessary to present evidence to establish or rebut the effect of this particular license. Here the police protested the granting of the application because the proposed location was in an area with a rapidly increasing number of commercial burglaries and robberies and the applicant's business was considered yet another potential victim. In addition, this particular police beat had a great demand for police service because of juvenile problems related to alcohol, drugs, gangs, and weapons. Fairly close to the proposed site was a teenage night club which generated substantial problems.

On closer questioning, however, the officer testified the census tract was about two miles by one mile, divided from north to south by a freeway. Most of the crime problems were on the western side of the freeway about three-fourths of a mile from applicant's proposed location. The one exception was the teenage night club which was situated east of the freeway about three-fourths of a mile from the applicant. The officer did not know where any other establishments with the same type of license were located. However, he did say that most of those licenses would be on the west side of the freeway about a mile away. In addition, he revealed that over the past three or four years the police department has protested every new application for a cocktail lounge,

---

[4]Business and Professions Code section 23958 contains a proviso to cover these circumstances in that an applicant with a tendency to "create a law enforcement problem" may have his application denied whether he is in a neighborhood of undue concentration or not.

but not every application for an off-sale license such as the applicant sought here. Notwithstanding the police department's formal protest, the officer testified there was no existing police problem in terms of the proposed location or its general vicinity and, as far as he knew, there were no other liquor stores within a mile. An investigator for the Department testified there were no type 21 licenses within one mile of the proposed premises and that a person travelling east would have to go more than a mile if he wished to buy distilled spirits. Having heard all of the testimony, the administrative law judge writing the proposed decision, which was later adopted by the Department, stated: "[T]here is no evidence of a police problem or undue concentration within the immediate vicinity of the proposed premises." Having found there was no evidence that the statistics for the general reporting area applied to the applicant's proposed site, the Department cannot then turn around and rely on rule 61.3 to deny an application. To do so is an abuse of discretion since the decision is not a reasonable one under the evidence.

The decision of the Board reversing the Department's denial of the license is upheld.

Staniforth, J., and Wiener, J., concurred.

Petitioner's application for a hearing by the Supreme Court was denied December 1, 1982. Newman, J., did not participate therein. Bird, C. J., and Richardson, J., were of the opinion that the application should be granted.