Filed 12/23/14

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| ADAM NICK et al., | |
|    Plaintiffs and Appellants, | G047115 |
|      v. | (Super. Ct. No. 30-2011-00489104) |
| CITY OF LAKE FOREST et al., | O P I N I O N |
|    Defendants and Respondents; | |
| 7-ELEVEN, INC., | |
|    Real Party in Interest and Respondent. | |

Appeal from a judgment of the Superior Court of Orange County, Geoffrey T. Glass, Judge.  Affirmed.

Law Offices of Stephen W. Berger, Steven W. Berger; Law Offices of Joshua Kaplan and Joshua Kaplan for Plaintiffs and Appellants.

Cummins & White, Bohm Wildish and Daniel R. Wildish for Defendants and Respondents.

Solomon, Saltsman & Jamieson, Ralph Barat Saltsman, Stephen Allen Jamieson and D. Andrew Quigley for Real Party in Interest and Respondent.

\*       \*       \*

Real party in interest and respondent 7-Eleven, Inc. (7-Eleven) applied to the Department of Alcoholic Beverage Control (Department) for a license to sell beer and wine at its store located within defendant and respondent City of Lake Forest (City).[1] Based on the number of other businesses that held liquor licenses in the area, the Department would not act on the application without first receiving a determination from the City that "public convenience or necessity would be served by . . . issuance [of the license to 7-Eleven]." (Bus. & Prof. Code, § 23958.4, subd. (b)(2).)[2] After investigating 7-Eleven's application, the City determined issuing the license would serve public convenience or necessity, and the City forwarded its conclusion to the Department. Plaintiffs and appellants Adam Nick, Sherry Nick, and Adam Nick & Associates, Inc. (collectively, Nick) filed the underlying action to obtain a writ of administrative mandamus compelling the City to set aside its public convenience or necessity decision. The trial court denied Nick's writ petition and entered judgment in favor of the City and 7-Eleven.

Nick contends we must overturn the City's public convenience or necessity determination for four reasons. Finding each of Nick's reasons lacks merit, we affirm the trial court's judgment. First, Nick contends the City failed to make its determination within 90 days of the Department's request as required by section 23958.4,

---

[1] The City Council and its individual members in their official capacities— Peter Herzog, Mark Tettemer, Kathryn McCullough, Marcia Rudolph, and Scott Voigts—also are defendants and respondents. We collectively refer all defendants and respondents as the City.

[2] All statutory references are to the Business and Professions Code unless otherwise stated.

subdivision (b)(2), but the plain statutory language states the period begins when the City *receives* the request for a public convenience or necessity determination, not when the request is made.

Second, Nick contends the City's resolution delegating authority to make the public convenience or necessity determination to the City's Planning Commission and Director of Development Services (Development Director) unconstitutionally changed the governing standard to public convenience *and* necessity. We do not interpret the resolution as changing the governing standard, and in any event reject this challenge because the resolution does not apply to the City Council's final determination.

Third, Nick contends the record lacks evidence showing issuance of the license to 7-Eleven would serve public convenience or necessity because 7-Eleven offers nothing different or unique in the sale of alcoholic beverages. Nick misconstrues the governing legal standard. The City has broad discretion to determine what constitutes public convenience or necessity on a case-by-case basis, and there is no single fact that must be established. The primary considerations are whether the City relied on reasonable factors based on the facts of the particular case, and whether substantial evidence supports its determination. Because we conclude the City relied on reasonable factors supported by substantial evidence, we may not disturb its determination.

Finally, Nick contends the City denied him a fair hearing on his administrative appeals because the Development Director made the City's initial public convenience or necessity determination and also acted as an advocate for 7-Eleven before the Department. The record, however, shows the Development Director did not advocate on 7-Eleven's behalf, but merely corrected erroneous information regarding the proximity of 7-Eleven's store to a future public park site.

# I

## LEGAL BACKGROUND

The California Constitution grants the Department exclusive authority to issue licenses for the sale of alcoholic beverages subject to any limitations the Legislature enacts. (Cal. Const., art. XX, § 22.) The Constitution further provides the Department "shall have the power, in its discretion, to deny, suspend or revoke any specific alcoholic beverage license if it shall determine for good cause that the granting or continuance of such license would be contrary to public welfare or morals . . . ." (*Ibid*.)

The Department may not issue a liquor license "if the issuance would result in or add to an undue concentration of licenses." (§ 23958.) Issuance of a license to sell alcohol for consumption off the premises where it was sold, referred to as an "off-sale license" (§§ 23393, 23394), results in an undue concentration when "the ratio of off-sale retail licenses to population in the census tract or census division in which the applicant premises are located exceeds the ratio of off-sale retail licenses to population in the county in which the applicant premises are located." (§ 23958.4, subd. (a)(3).)

Notwithstanding this prohibition, the Department may issue a license that would result in an undue concentration of licenses "if the local governing body of the area in which the applicant premises are located . . . determines within 90 days of notification of a completed application that public convenience or necessity would be served by the issuance." (§ 23958.4, subd. (b)(2).) The local governing body may delegate the public convenience or necessity determination to a "subordinate officer or body." (*Ibid*.) If the local governing body or its designee fails to act timely, the Department may still issue the license provided it determines issuance would serve the public convenience or necessity. (*Ibid*.) Whether the local governing body or the Department makes the public convenience or necessity determination, the ultimate

4

decision to issue the license lies with the Department. (Cal. Const., art. XX, § 22; see §§ 23958, 23958.4, subd. (b)(2).)

## II

## FACTS AND PROCEDURAL HISTORY

7-Eleven operates a convenience store in the City that sells grocery items, snack foods, beverages, including coffee, internet and video game cards, DVD's, computer games, music, and paper and household goods. The store also features fresh baked foods prepared onsite, such as pizzas, chicken wings and tenders, potatoes, and hash browns. Seeking to expand its offerings to include beer and wine, 7-Eleven applied to the Department for an off-sale liquor license.

The Department initially declined to act on 7-Eleven's application because three other businesses operating in the same census tract already held off-sale liquor licenses, including a gas station and convenience store Nick owned and operated across the street from 7-Eleven's store. Because issuing a license to 7-Eleven would result in an undue concentration of off-sale licenses, the Department required 7-Eleven first to obtain a determination from the City that issuing the license would serve the public convenience or necessity.

The Development Director investigated 7-Eleven's request and made the initial determination because the City previously passed Resolution No. 98-42 delegating all public convenience or necessity determinations either to the Planning Commission or the Development Director based on whether the applicant needed other City approvals. The Development Director concluded issuing the license to 7-Eleven would serve the public convenience or necessity. Nick appealed to the Planning Commission. After conducting a public hearing, the Planning Commission also determined issuing the license would serve the public convenience or necessity. Nick again appealed.

5

The City Council conducted a public hearing on Nick's appeal. After considering the evidence submitted by Nick and 7-Eleven, and public comments during the hearing, the City Council voted to deny the appeal and independently decided that issuing the license was publicly convenient or necessary. Nick then filed this action seeking a writ of administrative mandamus to overturn the City's determination. The trial court refused to issue the requested writ, finding the record supported the City's public convenience or necessity determination. The court entered judgment in the City's favor and Nick timely appealed.

III

DISCUSSION

A.    *The City Timely Made Its Public Convenience or Necessity Determination*

Nick contends the City's public convenience or necessity determination is "void, meaningless, invalid, and ineffective" because the City failed to act within the 90-day time period established by section 23958.4, subdivision (b)(2). According to Nick, the 90-day period began on June 29, 2010, when the Department "asked" the City to make a public convenience or necessity determination on 7-Eleven's license application, and therefore the City's authority expired before the Development Director made the initial determination on October 4, 2010.[3] We disagree. The statute's plain language does not support his contention the 90-day period commences when the Department asked the City to make the determination.

Interpreting section 23958.4, subdivision (b)(2) is a question of law we decide de novo. We begin by examining the words of the statute to determine the

_____

[3]    Nick does not contend the City's Planning Commission and City Council were required to decide his appeals within the 90-day period.

6

Legislature's intent. If unambiguous, the plain, commonsense meaning of those words controls. (*Jenkins v. Teegarden* (2014) 230 Cal.App.4th 1128, 1138-1139.)

Contrary to Nick's contention, section 23958.4, subdivision (b)(2)'s 90-day period does not commence upon the Department "ask[ing]" the City to make a public convenience or necessity determination. That subdivision states, "The 90-day period shall commence upon *receipt* by the local governing body of (A) notification by the [D]epartment of an application for licensure, *or* (B) a completed application according to local requirements, if any, *whichever is later*." (Italics added.) The record shows the City received 7-Eleven's request on July 6, 2010, which is less than 90 days before the City's Development Director made the initial public convenience or necessity determination. The City treated 7-Eleven's request as a completed application under its local requirements and therefore the 90-day period began on July 6, 2010.

Nick cites nothing in the record to show when the City received either the Department's notification of 7-Eleven's application or 7-Eleven's completed application under the City's requirements. In his opening brief, Nick claims the Department "furnished" June 29, 2010, as the date on which it "asked" the City to make a public necessity or convenience determination for 7-Eleven's application. Not only is the Department's purported request not the trigger for the 90-day period, but Nick also fails to cite evidence in the record to show the Department made any request to the City on June 29, 2010. We do not consider factual assertions lacking evidentiary support in the appellate record. (*Lonely Maiden Productions, LLC v. GoldenTree Asset Management, LP* (2011) 201 Cal.App.4th 368, 384 [appellate court may treat factual assertion as waived if appellant fails to support it with record citations].)

In his reply brief, Nick abandons June 29, 2010, as the date on which he contends the 90-day period commenced, and instead argues the evidence shows the City "was considering 7-Eleven's request for a [public convenience or necessity determination] long before July 6, 2010." To support this contention, Nick asks us to

7

augment the appellate record with four documents he obtained from the Department through a request under the California Public Records Act (Gov. Code, § 6250 et seq.). We deny Nick's request to augment the record because he makes the request to support an argument he improperly asserts for the first time in his reply brief. (See *Larson v. UHS of Rancho Springs, Inc.* (2014) 230 Cal.App.4th 336, 353 ["'argument is forfeited' where 'it is raised for the first time in [appellant's] reply brief without a showing of good cause'"].)

We also deny Nick's request to augment on the merits because the documents are irrelevant. The documents fail to show when the City received either notification from the Department of 7-Eleven's application or 7-Eleven's completed application under the City's requirements. Instead, the documents relate to miscellaneous communications between the City and the Department concerning an earlier application 7-Eleven submitted.

A few months before 7-Eleven applied for the liquor license at issue in this case, 7-Eleven submitted a separate liquor license application for the same convenience store, but incorrectly listed its street address. Both the Department and the City required 7-Eleven to submit a new application using the correct store address. Based on this application, 7-Eleven requested a public convenience or necessity determination that the City received on July 6, 2010, and used as the trigger for the 90-day period. Nick presents no evidence or authority showing the City failed to timely act. (*Fukuda v. City of Angels* (1999) 20 Cal.4th 805, 819-820 [administrative action is presumed correct under Evidence Code section 664, and therefore party challenging action has burden of producing evidence showing action was incorrect].)

Our conclusion the City timely made the public convenience or necessity determination on 7-Eleven's application eliminates the need to address Nick's contention the expiration of the 90-day period deprived the City of jurisdiction to make the

8

determination, and also the City's contention Nick waived his timeliness challenge by failing to assert it in the trial court.

B.      *Resolution No. 98-42 Is Constitutional and Does Not Affect the City's Final Public Convenience or Necessity Determination*

Nick contends the City lacked legal authority to make the public convenience or necessity determination on 7-Eleven's application because Resolution No. 98-42 unconstitutionally delegated to the Planning Commission and Development Director the authority to make that determination. According to Nick, state law preempts Resolution No. 98-42 because the resolution changed the governing standard from public convenience *or* necessity to public convenience *and* necessity. We disagree. Nick misinterprets the City's resolution and fails to recognize the resolution had no impact on the City Council's adherence to the governing standard in ultimately deciding whether issuing a liquor license to 7-Eleven served the public convenience or necessity.

Interpreting Resolution No. 98-42 is a question of law we independently review subject to the ordinary rules of statutory construction. (*County of Humboldt v. McKee* (2008) 165 Cal.App.4th 1476, 1489; *City of Vista v. Sutro & Co.* (1997) 52 Cal.App.4th 401, 409.) Our fundamental task is to ascertain the local governing body's intent in adopting the resolution so we may effectuate the resolution's purpose. (*McKee*, at pp. 1489-1490.) We begin by examining the resolution's language and adopt its plain meaning if the language is clear and unambiguous. (*People v. Cruz* (1996) 13 Cal.4th 764, 775.) The language is clear and unambiguous if the meaning assigned to it is not in conflict with other language in the same resolution. (*Dubins v. Regents of University of California* (1994) 25 Cal.App.4th 77, 83.) When the language is ambiguous we employ the rules of statutory construction and extrinsic aids to ascertain the most reasonable interpretation. (*Hughes v. Board of Architectural Examiners* (1998) 17 Cal.4th 763, 776 (*Hughes*).) In doing so, we consider the resolution as a whole and accord prime consideration to the resolution's objective. (*Dubins*, at pp. 83-84.)

9

We conclude Resolution No. 98-42 is ambiguous because it directs either the Planning Commission or the Development Director to determine whether issuing the liquor license would serve the public convenience *and* necessity, rather than the public convenience *or* necessity.[4]  We therefore apply the rules of statutory construction to determine the City's intent in passing Resolution No. 98-42.  Other than the change in phrasing, nothing on the resolution's face suggests the City intended to change the determination required by section 23958.4, subdivision (b)(2).  To the contrary, the resolution repeatedly declares the City intended to delegate the determination in a manner consistent with subdivision (b)(2).  In making their determinations concerning 7-Eleven's application, both the Planning Commission and the Development Director interpreted Resolution No. 98-42 as delegating to them the authority to make a public convenience or necessity determination.  (See *Smith v. Superior Court* (2006) 39 Cal.4th 77, 87 ["although not necessarily controlling, the contemporaneous administrative construction of a statute by those charged with its enforcement and interpretation is entitled to great weight"]; *County of Santa Barbara v. Connell* (1999) 72 Cal.App.4th 175, 185 ["courts give great weight and respect to the administrative agency's interpretation of a statute governing its powers and responsibilities"].)

Moreover, local enactments that conflict with state law are typically preempted and therefore void.  A local enactment conflicts with state law when it ""'""'"duplicates, contradicts, or enters an area fully occupied by general law, either expressly or by legislative implication.  [Citations.]"'""'"  [Citations.]"  (*O'Connell v. City of Stockton* (2007) 41 Cal.4th 1061, 1067, italics omitted.)  If the City intended to require

---

4      Resolution No. 98-42 states, "Pursuant to Business and Professions Code Section 23958.4(b)(2), the City Council hereby delegates the decision to make the public convenience *and* necessity findings in areas of undue concentration of alcoholic beverage licenses [to the Planning Commission or Development Director depending on what other approvals, if any, the applicant requires from the City]."  (Italics added.)

10

a determination of public convenience and necessity, Resolution No. 98-42 would contradict and therefore conflict with state law. In interpreting the resolution, however, we must presume the City intended to act within the scope of its constitutional powers, and interpret the resolution "in a manner, consistent with [its] language and purpose, that eliminates doubts as to the [resolution's] constitutionality." (*Hughes*, 17 Cal.4th at p. 788; *Bayscene Resident Negotiators v. Bayscene Mobilehome Park* (1993) 15 Cal.App.4th 119, 134 ["If reasonably possible, legislation should be construed to preserve its constitutionality"].) Accordingly, we reject Nick's contention and interpret Resolution No. 98-42 as delegating the authority to determine whether issuing a liquor license was a public convenience *or* necessity. Interpreted in this manner, Resolution No. 98-42 is consistent with state law and all actions taken under its delegation are valid.

Even if we interpreted Resolution No. 98-42 as conflicting with state law by modifying the governing standard under section 23958.4, subdivision (b)(2), Resolution No. 98-42 did not affect the validity of the City's final public convenience or necessity determination. Resolution No. 98-42 solely delegated authority to the Planning Commission and Development Director to make the section 23958.4, subdivision (b)(2) determination that otherwise would have rested with the City Council as the City's governing body. The resolution did not address the City Council's authority to make the public convenience or necessity determination, and did not impact the standards the City Council applies in making that determination. Under the City's municipal code, the Development Director's determination may be appealed to the Planning Commission, and the Planning Commission's determination may be appealed to the City Council. (Lake Forest Mun. Code, § 2.04.100.) On appeal from the Planning Commission's decision, the City Council conducts a de novo review and independently decides the matter. (see *id*. at § 2.04.130.) Accordingly, once Nick appealed the Planning Commission's public convenience or necessity determination to the City Council, Resolution No. 98-42 became irrelevant. The City Council independently made the

11

public convenience or necessity determination under section 23958.4, subdivision (b)(2). Indeed, the City Council's resolution states it was deciding the appeal de novo and independently determined "public convenience or necessity is served by issuance of an off-sale beer and wine license [to 7-Eleven]." (Capitalization omitted.) Any purported invalidity of Resolution No. 98-42 therefore does not affect the City's final public convenience or necessity determination.

C.      *The City Acted Within the Scope of Its Discretion and Substantial Evidence Supports Its Public Convenience or Necessity Determination*

Nick contends we must overturn the City's determination because the record lacks evidence showing the issuance of a liquor license to 7-Eleven would serve either the public convenience or necessity. We disagree.

As explained above, the California Constitution confers broad discretion on the Department in determining whether to issue a liquor license. (Cal. Const., art. XX, § 22; *Department of Alcoholic Bev. Control v. Alcoholic Bev. etc. Appeals Bd.* (1982) 133 Cal.App.3d 814, 817 (*Diez*).) That discretion extends to the determination whether issuance of a license would serve the public convenience or necessity. (*Sepatis v. Alcoholic Bev. etc. Appeals Bd.* (1980) 110 Cal.App.3d 93, 102-103 (*Sepatis*).)

Any factual findings the Department makes to support a public convenience or necessity determination are reviewed under the substantial evidence standard. (*Sepatis*, *supra*, 110 Cal.App.3d at p. 102.) The Department's exercise of its discretion based upon its factual findings is reviewed under the deferential abuse of discretion standard: "'[T]he [D]epartment exercises a discretion adherent to the standard set by reason and reasonable people, bearing in mind that such a standard may permit a difference of opinion upon the same subject. . . . Where the decision is the subject of choice within reason, the [D]epartment is vested with the discretion of making the selection which it deems proper; its action constitutes a valid exercise of that discretion; and the appeals board or the court may not interfere therewith. [Citations.] Where the

12

determination of the [D]epartment is one which could have been made by reasonable people, the appeals board or the courts may not substitute a decision contrary thereto, even though such decision is equally or more reasonable in the premises.  [Citations.]' [Citation.]"  (*Ibid*.; see *Department of Alcoholic Bev. Control v. Alcoholic Bev. etc. Appeals Bd.* (1982) 136 Cal.App.3d 315, 318 (*Kolender*); *Diez*, *supra*, 133 Cal.App.3d at p. 817.)

The foregoing cases address the broad discretion vested in the Department when it makes a public convenience or necessity determination, and the standard of review applicable to the Department's decision.  The parties have not cited, and our research has not uncovered, case law addressing the standard a local governing body employs when making a public convenience or necessity determination.  When the foregoing cases were decided, section 23958 required the Department rather than the local governing body to determine whether issuance of a liquor license would serve the public convenience or necessity.  (*Sepatis*, *supra*, 110 Cal.App.3d at p. 96.)  The Legislature amended the Business and Professions Code in 1994 to add section 23958.4, which requires the local governing body to make the public convenience or necessity determination.  (Stats. 1994, ch. 630, § 2.)  Because the City made its determination in aid of the Department's exercise of its discretion to decide whether to issue a liquor license, we conclude the City may exercise the same level of discretion as allowed to the Department in the foregoing cases, and therefore the City's exercise of that discretion is subject to the same standard of review.

Section 23958.4 does not define the phrase "public convenience or necessity," and therefore the discretion to make that decision includes the discretion to determine the relevant factors on a case-by-case basis.  (*Sepatis*, *supra*, 110 Cal.App.3d at pp. 99, 102-103.)  Provided the decision maker does not act arbitrarily or rely on factors that are not supported by substantial evidence, the determination of what

13

constitutes public convenience or necessity will not be disturbed. (*Id*. at pp. 102-103; see *Kolender*, *supra*, 136 Cal.App.3d at p. 318; *Diez*, *supra*, 133 Cal.App.3d at p. 817.)

For example, in *Sepatis*, a business owner applied to the Department for a liquor license to operate a bar in an area unduly concentrated with other bars. The proposed bar differed from the other bars because it was housed in a renovated Victorian building with large windows and the owner planned to operate it as a "'fern' bar . . . marked by an ambience of ferns and other plants." (*Sepatis*, *supra*, 110 Cal.App.3d at p. 97.) The Department issued the license, finding "the proposed premises 'will appeal to all segments of the community including many residents and business people in the area who are presently reluctant to enter other bars in the vicinity,' and that it would thus serve public convenience or necessity." (*Ibid*.) The Alcoholic Beverage Control Appeals Board (Appeals Board) reversed and denied the application because, "in determining the existence of public convenience or necessity 'the [D]epartment may not concern itself with the physical appearance of the structure housing a licensed premises nor the esthetic features thereof' . . . [and it is not] appropriate to consider the fact 'that an applicant would cater to a particular segment of the public' or that 'a certain group of persons does not feel comfortable in the presence of some other group of persons at other licensed premises.'" (*Id*. at p. 98.)

The Court of Appeal reversed the Appeals Board's decision and reinstated the Department's decision based on the broad discretion vested in the Department to determine what constitutes public convenience or necessity. The *Sepatis* court concluded the Department was free to consider any reasonable factor under the circumstances and supported by substantial evidence: "The Department's finding that the proposed premises 'will appeal to all segments of the community including many residents and business people in the area who are presently reluctant to enter other bars in the vicinity' is supported by substantial evidence on this record, and we cannot say that the Department abused its constitutional or statutory discretion in considering that fact as an

14

aspect of public convenience . . . ." (*Sepatis*, *supra*, 110 Cal.App.3d at pp. 102-103, fn. omitted.)

Here, the City concluded issuing the license to 7-Eleven would serve the public convenience or necessity because (1) 7-Eleven's business is consistent with applicable zoning regulations; (2) 7-Eleven provides a wide variety of items for sale in addition to alcohol and "will provide a convenient location for the public to shop for necessities . . . while also purchasing alcohol"; (3) the store's location and design prevent "unviewed loitering"; (4) 7-Eleven has developed and implemented effective crime deterrence programs; (5) 7-Eleven is an experienced convenience store operator with more than 6,200 locations nationwide; (6) 7-Eleven provides "the latest trend of online video games, DVD's, computer games and compact discs"; (7) 7-Eleven offers its "exclusive private label line" of products that allows customers "to purchase products at a lower cost, which is a substantial benefit given the current economic downturn"; and (8) the local police concluded issuing the license "would not create a law enforcement problem."

Substantial evidence supports each of these findings and we see nothing arbitrary in the City basing its public convenience or necessity determination on these findings. Indeed, the findings support the conclusion that issuing the license to 7-Eleven would be convenient for the public because it would provide a single location to purchase alcoholic beverages and a wide variety of everyday items, including 7-Eleven's private label brand not available elsewhere and offered at a lower price than competing brands. The findings also show local law enforcement officials did not anticipate that issuing the license to 7-Eleven would create a crime problem and 7-Eleven has programs in place to deter illegal conduct.

Nick contends issuance of the license to 7-Eleven does not serve the public convenience or necessity as a matter of law because 7-Eleven's store offers nothing "different or unique in the provision and sale of alcoholic beverages to the community."

15

According to Nick, the *Diez* decision required the City to conclude issuing the license would not serve the public convenience or necessity because his store directly across the street from 7-Eleven's already offers alcoholic beverages and "virtually identical food, snack and convenience items (in addition to gasoline)." Although Nick views this case and *Diez* as "virtually identical," he misconstrues *Diez* and ignores the governing standard of review.

In *Diez*, a market located in an area with an undue concentration of liquor licenses applied for an off-sale license to sell beer and wine. (*Diez*, *supra*, 133 Cal.App.3d at pp. 816-817.) The Department denied the application because it found (1) the market was located in a high crime area and (2) "[a]lthough [the market] sell[s] a unique variety and assortment of Cuban grocery items, it was not established that public convenience and necessity require the issuance of a license to the [market], in that customers at the [market] may easily avail themselves of alcoholic beverages from the licensees in close proximity to the [market]." (*Id*. at pp. 818-819.) The Appeals Board reversed, finding the Department had not established good cause for denying the license. (*Id*. at p. 817.) The Court of Appeal, however, reversed and reinstated the Department's decision denying the application. The *Diez* court explained the Appeals Board could not interfere with the Department's exercise of its discretion because the Department's findings supported its decision and fell within the scope of the Department's discretion. (*Id*. at pp. 817, 819.)

Contrary to Nick's contention, *Diez* does not establish that a store must offer something unique in the sale of alcoholic beverages to support a finding of public convenience or necessity. As explained above, whether issuance of a license would serve the public convenience or necessity must be determined on a case-by-case basis; there is no single fact that must be established because there is no single definition of what constitutes public convenience or necessity. The primary consideration is whether the determination is reasonable based on the circumstances of each case.

16

*Diez* illustrates the decision maker's broad discretion in determining public convenience or necessity. In *Diez,* the Appeals Board intruded upon the Department's exercise of its discretion by reversing the Department's decision even though it was reasonable and supported by substantial evidence. It is irrelevant that the Appeals Board's decision would have been reasonable had it been the original decision.

Nick asks us to assume the role of the Appeals Board in *Diez* and overturn the City's valid exercise of its discretion. We decline to do so. As explained above, the City's decision was reasonable based on its findings and substantial evidence supports those findings. We therefore may not interfere with the City's decision. It does not matter that the evidence may have supported different findings. To overturn the City's decision, Nick had to show that either the decision was unreasonable under the findings the City made or no substantial evidence supported the City's findings. Nick failed to meet his burden.

Finally, Nick objects that the City's resolution states it considered "a variety of factors derived from case law in making [its public convenience or necessity] determination . . . includ[ing] the character of the premises, the aesthetics and ambience of the proposed business, the attractiveness of the proposed business, the manner in which the business is to be conducted or unique features, the types of guests, the mode of operations, the ability to serve an underserved population, and the convenience of purchasing alcohol in conjunction with specialty food sales or service." According to Nick, it was improper for the City to consider these factors because they are contrary to established case law on public convenience or necessity determinations. He is mistaken.

As explained above, there is no statutory definition for the phrase "public convenience or necessity" and the case law allows the decision maker to decide on a case-by-case basis what factors bear on the public convenience or necessity determination. (*Sepatis*, *supra*, 110 Cal.App.3d at pp. 99, 102-103.) Indeed, in *Sepatis*, the Court of Appeal expressly declined the invitation to "propound[] a definitive

17

interpretation of the disputed phrase." (*Id*. at p. 102.)  There is nothing improper about the City identifying a nonexhaustive list of factors it considered on the issue.  Moreover, the factors the City identified are consistent with the factors the Department considered in *Sepatis*.  (*Id*. at pp. 97-98.)

D.      *Nick Received a Fair Hearing*

Nick contends the City denied him a fair hearing because its Development Director acted as a decision maker on the public convenience or necessity determination and also as an advocate for 7-Eleven by sending a letter to the Department explaining the proximity of 7-Eleven's store to a future public park site.  According to Nick, the Development Director acting in these conflicting roles violated his due process right to a fair hearing.  The record does not support Nick's contention.

The constitutional guarantee of due process requires an administrative agency conducting adjudicative proceedings to act as a fair and impartial tribunal. "A fair tribunal is one in which the judge or other decision maker is free of bias for or against a party.  [Citations.]  Violation of this due process guarantee can be demonstrated not only by proof of actual bias, but also by showing a situation 'in which experience teaches that the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable.'  [Citation.]"  (*Morongo Band of Mission Indians v. State Water Resources Control Bd.* (2009) 45 Cal.4th 731, 737 (*Morongo Band*).)

Although administrative decision makers are ordinarily presumed to be impartial, a bias resulting in the denial of a fair hearing may arise when an administrative agency fails to adequately separate its prosecutory and adjudicatory functions in the same proceeding.  (*Morongo Band*, *supra*, 45 Cal.4th at pp. 737-738; *Nightlife Partners, Ltd. v. City of Beverly Hills* (2003) 108 Cal.App.4th 81, 90-94 (*Nightlife Partners*).)  "[A] prosecutor, by definition, is a partisan advocate for a particular position or point of view . . . [and s]uch a role is inconsistent with the objectivity expected of administrative

18

decision makers." (*Nightlife Partners*, at p. 93.) Accordingly, the overlap of these conflicting roles in the same proceeding violates due process because it creates an appearance of unfairness and a probability of outside influence. (*Morongo Band*, at pp. 737-738; *Nightlife Partners*, at pp. 91-92.)

For example, in *Nightlife Partners*, the Court of Appeal concluded a city denied a fair hearing when the same attorney acted as the city's advocate on the initial administrative decision to deny a business's application to renew its adult entertainment permit, and also as the legal advisor to the administrative hearing officer who heard the business's appeal from that initial denial. (*Nightlife Partners*, *supra*, 108 Cal.App.4th at pp. 86, 98.) In *Morongo Band*, however, the Supreme Court concluded an administrative agency did not deny the plaintiff a fair hearing when the same attorney prosecuted one matter before the agency's decisionmaking body and simultaneously advised that decisionmaking body on an unrelated matter. (*Morongo Band*, *supra*, 45 Cal.4th at p. 734.) The *Morongo Band* court explained the same appearance of unfairness does not arise when the two matters are unrelated because it is presumed administrative decision makers will objectively evaluate the factual and legal information they receive to reach a fair and reasonable decision unless specific evidence shows they have a personal interest or particular bias. (*Id.* at pp. 741-742.)

Here, the undisputed facts show Nick's attorney initially contacted the City to inquire which parcels near 7-Eleven's store were designated for use as a public park because section 23789 authorizes the Department to deny a liquor license application for premises "located within at least 600 feet of schools and public playgrounds or nonprofit youth facilities." (§ 23789, subd. (b).) In response, the City's staff initially identified a parcel less than 600 feet from 7-Eleven's store as a future public park. Nick's attorney then wrote a letter to the Department passing along this information and suggesting the Department should deny 7-Eleven's application on this ground. After Nick's attorney sent a copy of the letter to the City, the City's staff further researched the parcels in the

19

area of 7-Eleven's store and discovered it had identified the wrong parcel as a future park site. The City's staff immediately contacted Nick's attorney to advise him of its error and the Development Director advised the Department the parcel designated for a future park use was more than 600 feet from 7-Eleven's store. A few days after writing this letter, the Development Director made the City's initial determination that issuing 7-Eleven the requested license would serve the public convenience or necessity.

Based on our independent review of the record (*Clark v. City of Hermosa Beach* (1996) 48 Cal.App.4th 1152, 1169-1170 [whether plaintiff received fair administrative hearing is question of law subject to de novo review]), we conclude the foregoing facts do not establish Nick was denied a fair hearing or that the City otherwise violated Nick's due process rights. Although the City's Development Director made the initial administrative determination that issuing the license to 7-Eleven would serve the public convenience or necessity, she did not act as an advocate for 7-Eleven before the Department. The Development Director did not advocate any specific course of action by the Department. She simply corrected erroneous information the City's staff had provided to Nick's attorney and informed the Department. Nothing about this suggests even an appearance of bias by the Development Director. Moreover, Nick does not contend the City Council—as the City's governing body and final decision maker on 7-Eleven's request for a public convenience or necessity determination—was biased in any way. We therefore reject this challenge.

20

## IV

### DISPOSITION

The judgment is affirmed.  Lake Forest and 7-Eleven shall recover their costs on appeal.

ARONSON, ACTING P. J.

WE CONCUR:


FYBEL, J.


IKOLA, J.

21